No. 10,333.

FOULKS ET AL. *v.* REED.

VENDOR'S LIEN.—*Notice.*—Proof of notice of a vendor's lien, acquired by a purchaser in another transaction two years before his purchase, is not sufficient to charge the lands with the lien, as against him.

From the Daviess Circuit Court.

*O. H. Cobb, J. H. O'Neall* and *D. J. Hefron,* for appellants.

FRANKLIN, C.—Appellee, James Reed, sued appellant Hiram Foulks, with one Richard Reed, in the Knox Circuit Court, to recover a judgment against said Richard Reed for the consideration agreed to be paid by said Richard to James for certain real estate conveyed by said James to said Richard, and to have the judgment declared a vendor's lien upon the real estate in the hands of appellant Foulks, alleging him to be a subsequent purchaser of the real estate, with notice of appellee's vendor's lien. Richard Reed was defaulted. Appellant filed an answer in general denial, and the venue was

changed to the Daviess Circuit Court. There was a trial by jury, and a verdict returned in favor of the plaintiff, and, over a motion for a new trial, judgment was rendered for the plaintiff. The error assigned is the overruling of the motion for a new trial.

The reasons stated in the motion for a new trial are, that the verdict was not sustained by the evidence, and is contrary to law.

The parties filed an agreed statement of the facts of record as follows: " It is agreed that on the 19th day of December, 1878, James Reed was the owner of the real estate mentioned in plaintiff's complaint, and that on said 19th day of December, 1878, James Reed conveyed said real estate to Richard Reed by warranty deeds, and that the consideration expressed therein was $2,200, and that said deeds contained no stipulations with reference to any purchase-money ; that on the 16th day of January, 1879, Richard Reed mortgaged said real estate to Bernhard Kuhn, Sr., to secure payment of $600, with interest at ten per cent. thereon till paid ; and that on the 12th day of July, 1879, said Kuhn died, and that afterwards Sarah Kuhn became his administratrix ; and that at the February term, 1880, of the Knox Circuit Court, Sarah Kuhn, administratrix of said Bernhard Kuhn, obtained a decree of foreclosure of said mortgage ; and that on the the 15th day of May, 1880, the clerk of the Knox Circuit Court issued a copy of said decree to the sheriff of Knox county, Indiana ; and that on the 12th day of July, 1880, said sheriff, by virtue of said decree, sold said real estate to said Hiram A. Foulks for the sum of $660, and gave to said Foulks a certificate of purchase in ordinary form ; and that on the 12th day of July, 1881, the said sheriff executed to said Foulks a deed for said real estate, on presentation of said certificate ; and that said Foulks is the legal owner of said real estate."

Richard Reed testified that he was the son of the plaintiff James Reed ; that he was a single man, and had all the time lived with his father, on the premises named ; that he pur-

chased the land of his father, and agreed to pay him for it $1,316, in instalments of $100 per annum, until paid, and he received deeds from his father; that.it was a part of the consideration for the land that his father was to continue to live with him on the land, and have a small piece to cultivate each year; that he then sought to mortgage the land, and went to appellant Foulks to learn where he could obtain a loan, and he sent him to Bernhard Kuhn, Sr.; he went to see Kuhn, and told him his wants; told him that he had bought the land of his father, but owed the purchase-money for it, who referred him back to Foulks, to get an abstract of title, and arrange for the loan. Foulks told him the land was misdescribed, and he must.get new deeds, according to a survey, from his father, which he did. He took the new deeds to Foulks, who made an abstract of the title; he then told Foulks that the purchase-money for the land was unpaid; his father knew nothing about the mortgage, and he never paid any part of the purchase-money. After the mortgage was executed Kuhn paid out of the loan of $600 $50 to Foulks for his services, $90 to Kuhn for a horse, $150 for taxes on the land, and the balance to the mortgagor.

James Reed, the appellee, testified that he knew nothing of the mortgage until he saw the land advertised for sale under the foreclosure proceedings; that he did not attend the sale or pay any further attention to it; had no money to buy the land or redeem it from the sale. He also testified as to the terms of the sale to his son, the same as testified to by the son, and that there was no note or other evidence of indebtedness given for the consideration-money.

B. Kuhn, Jr., testified that he was a nephew of the deceased, and did business for his uncle; that he made the loan in question himself; that the matter was left to him and Foulks, who recommended the title to be all right, and wrote the mortgage. He let Richard Reed have the horse for which the $90 was paid, and corroborated the testimony of Richard Reed as to

the payment of the remainder of the loan ; that he never heard about any of the purchase-money being unpaid until after the sheriff had made the sale to Foulks.

Foulks testified that Richard Reed never told him that any part of the purchase-money was unpaid, but told him that there were no liens of any kind on the land, and that he told B. Kuhn, Jr., that the title was all right and clear of encumbrances, and the loan was made accordingly. The retaining of the possession by the grantor, being apparently joint with the grantee, was not constructive notice to an innocent purchaser in fact, of any secret claim or lien that the grantor might have upon the land. His possession was not obviously inconsistent with that of the grantee, and might be considered as the facts would warrant. Possession, in order to be notice to a subsequent purchaser, must be open, notorious and exclusive, under an apparent claim of ownership. Wade Notice, sec. 273, *et seq.;* see sec. 290. And in this case there is no evidence showing that at the time of the sheriff's sale appellant had any knowledge of appellee's possession of the premises.

The evidence tended to show that Bernhard Kuhn, Sr., at the time he took the mortgage, had actual notice that the purchase-money was unpaid, although that was inferentially contradicted by Bernhard Kuhn, Jr. The evidence also tended to show that Foulks had notice at the time of the execution of the mortgage that the purchase-money was unpaid, though this is squarely contradicted by Foulks ; but this court can not weigh the testimony ; that was a question for the jury and the court below to determine. The question presented to this court is, was such notice to Foulks sufficient to charge the land in his hands with a vendor's lien for the purchase-money ? There was no attempt to prove actual notice to Foulks of there being any unpaid purchase-money at the time he purchased the land at the sheriff's sale, some eighteen months after the execution of the mortgage. If it be admitted that Richard Reed told him of the unpaid purchase-money at the

date of the execution of the mortgage, he was then only acting as agent of one of the parties, had no personal interest in the matter at that time, and had no negotiations pending by which he might become interested. He only acted as scrivener in the execution of the mortgage, and had no interest in charging his memory with what was said or done, and if the purchase-money was then unpaid, that does not raise a presumption that it remained unpaid at the time of the sheriff's sale. The execution of the mortgage was an entirely different transaction, so far as appellant was concerned, from his subsequent purchase of the land, and he may have forgotten what was said at the time of the execution of the mortgage.

In 2 Sugden Vendors, 8th Am. ed., bottom p. 755, it is said that the purchaser of the land will not " be bound by notice in a previous transaction which he may have forgotten ; " and again it is said by the same learned author, that " the notice to the purchaser must be in the same transaction ;" and further, " to constitute a binding notice, it must be given by a person interested in the property, and in the course of the treaty for the purchase."

The case of *White* v. *Fisher*, 77 Ind. 65 (40 Am. R. 287), is very similar to the one under consideration, and it was there held that the facts were not sufficient to charge the purchaser with notice of the vendor's lien. We think appellee lost his vendor's lien by not giving some notice thereof at or in a short time before the sheriff's sale to appellant. He saw the advertisement and knew of the time of the sale, but gave no further attention to it, and acted as though he was willing for some innocent person to purchase the land. We think that there was an entire failure in the evidence to prove notice to Foulks of appellee's vendor's lien at the time of the purchase of the property by appellant at the sheriff's sale, for which a new trial ought to have been granted to appellant. The court erred in overruling the motion for a new trial. The judgment as to appellant ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing

Jeffersonville, Madison and Indianapolis R. R. Co. *et al. v.* Barbour *et al.*

opinion, that the judgment of the court below be and it is in all things reversed as to the said appellant, at the costs of appellee, and the cause is remanded, with instructions to the court below to grant appellant a new trial, and for further proceedings in accordance with this opinion.