The Farmers' Bank of Mooresville v. Butterfield.

Filed. Nov. 19, 1884.   Petition for a rehearing overruled April 25, 1885.

———◆———

No. 11,543.

THE FARMERS' BANK OF MOORESVILLE v. BUTTERFIELD.

MORTGAGE.—*Release.*—*Notice.*—Where a mortgagee, without payment, releases his mortgage upon the record thereof merely to enable the mort-

gagor to mortgage the same lands to A. for a loan, with the agreement that, as between the parties, it shall remain in force, if B. takes a subsequent mortgage with notice of the facts, the first mortgage will bind as to him and be a lien prior to his mortgage.

EQUITY.— *Trial by Jury.—Answers to Interrogatories.— Practice.*—Where a cause in equity is submitted to a jury, the finding is only for the information of the court, and a motion for judgment upon answers to interrogatories, notwithstanding a general verdict, is improper.

SAME.—There is no error in submitting to a jury questions of fact in a cause in equity, where the record shows that the court did this only for information, and afterwards made a finding for itself.

SAME.—*Instructions.*—In such case, instructions to the jury should not be general as in a suit at law, but should be only such as relate to the determination of the questions of facts submitted.

SUBROGATION.—*Mortgage.—Priority.*—A purchaser of land which is subject to a mortgage, who pays off an older mortgage, is entitled by subrogation to set it up and foreclose it as a lien prior to the later mortgage.

MORTGAGE.—*Consideration.*—An extension of time, granted in consideration of the execution of a mortgage, constitutes the mortgagee a purchaser for value.

NOTICE.—*Agency.*—A purchaser of land for value, who, nearly five years prior to his purchase and while acting as agent for another in a different transaction, learns of the existence of a mortgage lien upon the land, is not chargeable as a purchaser with such notice.

SAME.—*Release of Record.—Presumption.*—A release of record presumptively destroys the lien of a mortgage, and notice of the existence of the debt secured thereby does not charge any person with notice of the continued existence of the mortgage.

From the Morgan Circuit Court.

G. W. Grubbs and M. H. Parks, for appellant.

F. P. A. Phelps, J. H. Jordan, G. A. Adams and J. S. Newby, for appellee.

BEST, C.—Alfred Harvey and wife, on the 1st day of April, 1874, executed a mortgage upon the real estate in the complaint described to Eli Harvey, his father, to secure eight notes of $646 each, payable annually on and after the 25th of December, 1876. This mortgage was duly recorded, and on the 9th day of January, 1877, Eli Harvey released it of record by the following entry:

The Farmers' Bank of Mooresville v. Butterfield.

" I hereby certify this mortgage is released by payment in full. January 9th, 1877. ELI HARVEY.

."Attest: W. G. GARRISON, R. M. C."

On the 16th day of February, 1877, Alfred Harvey and wife executed a mortgage upon said land to the Dundee Mortgage and Trust Company to secure a loan of $2,400, with a portion of which he paid the first three notes embraced in his father's mortgage. Prior to August 19th, 1881, Alfred Harvey became indebted to the appellant, the Farmers' Bank of Mooresville, in the sum of $4,000, for which it held his notes with his father as surety, and on that day the payment of said sum was extended six months, and to secure the same Alfred made his note with his father and James A. Hadley as his sureties, and he and his wife also made a mortgage upon said land to secure said note. On the 13th day of October, 1881, Alfred Harvey and his wife conveyed said land to the appellant, in consideration of which the appellant surrendered its note of $4,000 and assumed to pay the mortgage of $2,400 executed to the Dundee Mortgage and Trust Company. Prior to this time Eli Harvey endorsed to the appellee the first two notes still held against Alfred, and subsequently he endorsed to him as collateral security the remaining three notes, and on the 19th day of November, 1881, the appellee brought this action against Alfred Harvey, his wife, and the appellant, to foreclose the mortgage made by Alfred and wife to Eli Harvey.

The complaint consisted of five paragraphs. A demurrer, for the want of facts, was overruled to the second, third and fourth paragraphs, and an answer was filed. A cross complaint of four paragraphs was also filed. The first sought to quiet the appellant's title. The second sought the foreclosure of a prior mortgage executed to the school fund, which the appellant had been compelled to pay. The third sought the foreclosure of the Dundee mortgage, which the appellant had paid, and the fourth sought the foreclosure of appellant's mortgage. A reply in denial of appellant's an-

swer and an answer in denial of the cross complaint completed the issues.

A jury was empanelled, over the appellant's objection, and a great many interrogatories submitted by both parties were answered. A motion by appellant for judgment in its favor upon the answers of the jury to the interrogatories was overruled, and the court found that the appellee was entitled to a foreclosure of the mortgage as to the first two notes, and against him as to the others, subject, however, to the mortgage made to the Dundee Mortgage and Trust Company, and rendered judgment accordingly. A motion for a new trial was overruled, and these various rulings are assigned as error.

The second, third and fourth paragraphs of the complaint were substantially alike, and aver, in substance, that said mortgage was released of record simply for the purpose of enabling Alfred Harvey to negotiate the loan of $2,400 with the Dundee Mortgage and Trust Company, with an agreement that such mortgage should remain a continuing security for the payment of said notes until said Alfred should execute a second mortgage upon said land to secure said note, which he agreed to do upon demand; that such mortgage has not been executed, nor have the notes been paid, and that the appellant, at the time it took its mortgage, and at the time it received a conveyance of said land, had actual notice of such facts and knew that said mortgage remained a subsisting security for the payment of said notes.

The release of the mortgage under the circumstances stated did not operate to extinguish it, but simply to cancel the record of its existence, and thereafter it remained in force as an unrecorded mortgage. *Etzler* v. *Evans*, 61 Ind. 56.

The notion of appellant, that the mere act of cancelling the record operated as an extinguishment of the mortgage, and that such lien, if any, as Eli Harvey thereafter had, grew out of and depended upon the agreement of Alfred to execute another mortgage, can not be sustained, and we, therefore,

pass the question as to whether or not such agreement is within the statute of frauds.

The entry of satisfaction operated as an extinguishment of the mortgage as to all who had no notice of its continued existence, but as to such it continued a lien notwithstanding such entry. These paragraphs were, therefore, sufficient, and the demurrer properly overruled.

The motion of appellant for judgment in its favor upon the answers of the jury to interrogatories was properly overruled, as such motion is unauthorized on the trial of an equitable cause by the court. Such motions are only entertained when a cause is'tried, and a general verdict, with answers to interrogatories, is returned by the jury. Section 547, R. S. 1881; *Louthain* v. *Miller*, 85 Ind. 161.

The appellant also insists that the court submitted the cause to a jury for trial, and that such action was erroneous. An examination of the record leads us to a different conclusion. Many interrogatories were submitted to the jury, but as this was done, as the record recites, for the information of the court, and as the court made its finding as is usual in equitable cases, we can not say that the cause was submitted to and tried by the jury. The practice in such cases does not contemplate the submission of the issues to the jury, but only questions of fact involved in the issues, and where nothing more than this is done, no error has been committed. *Ketcham* v. *Brazil Block Coal Co.*, 88 Ind. 515.

The instructions asked by appellant were properly refused, for the reason that they embraced the law as applicable to all the issues in the case, and were not limited to such rules as would have enabled the jury to determine the questions of fact submitted to them. In such case the court may properly refuse general instructions, as the jury have nothing to do with applying the law to the facts.

The remaining question is whether the evidence supports the finding. The uncontradicted testimony shows that Eli Harvey, before he conveyed the land to Alfred, executed a

mortgage upon a portion of the land to the State to secure a loan of school funds, and that after the appellant purchased the land, it paid $240, the amount then due upon such mortgage. This payment, under these circumstances, subrogated the appellant to the rights of the State under this mortgage, and as it was the first lien upon the land, the appellant was entitled to its foreclosure as against the appellee. The finding that the appellee was entitled to a foreclosure subject only to the Dundee mortgage, was, therefore, clearly contrary to the evidence.

The only disputed question of fact is whether or not the appellant, at the time it accepted its mortgage, and at the time it purchased the land, had notice of the continued existence of the appellee's mortgage. The extension of time granted in consideration of the execution of the mortgage constituted the appellant a purchaser for value. *Gilchrist* v. *Gough*, 63 Ind. 576.

This fact rendered it incumbent upon the appellee to prove that the appellant, when it received its mortgage, had notice of the continued existence of the appellee's mortgage. The only notice claimed to have been given was such as was given by Alfred Harvey to John A. Taylor, cashier of appellant, at the time the Dundee mortgage was executed, and such as was given by Eli Harvey to Robert R. Scott, a director and member of the finance committee of appellant, who transacted the business of accepting the mortgage and purchasing the land.

At the time the Dundee mortgage was executed, John A. Taylor was its agent, and to him Alfred Harvey applied for the loan. Taylor knew of his father's mortgage, and that Alfred desired the loan to pay upon the debt. He informed Alfred that he could not obtain the loan unless his father would release his mortgage and advised him to get it done. This was done and the loan obtained. The known purpose of Alfred in obtaining the loan was perhaps sufficient to charge Taylor with notice that the entire debt was not paid, but there is not one word in the evidence tending to show

that Taylor knew that the mortgage was a continuing security for the unpaid portion of the debt. Indeed, the record shows the contrary. In answer to this question, "State whether or not there was anything said about said debt from you to Eli Harvey remaining unpaid, in the same conversation with said John A. Taylor, cashier," to which Alfred answered: "Taylor said I could make a second mortgage from myself to Eli Harvey for the balance of my debt remaining unpaid to him if we wished to; that that would have to be done by agreement among ourselves, meaning Eli Harvey, myself and wife." This was all that was ever said to Taylor about the residue of the debt or the release of the mortgage, and it is manifest that he was neither informed, nor understood, that the mortgage, notwithstanding such contemplated release, was to remain a subsisting security for the unpaid portion of the debt. It rather appears that he understood that the lien of this mortgage was to be released, and a new lien created to secure the unpaid portion of the debt by the execution of a new mortgage.

Aside from this, Taylor was not acting for appellant and such information as he acquired in this conversation, occurring as it did nearly five years before the execution of appellant's mortgage, in no wise bound it. *White* v. *Fisher*, 77 Ind. 65 (40 Am. R. 287); *Foulks* v. *Reed*, 89 Ind. 370.

Again, such information can not possibly charge the appellant with notice of the existence of such mortgage, in view of the fact that Alfred Harvey, at the time the mortgage was made and the deed accepted, informed Robert R. Scott, who transacted the business for appellant, that there was no mortgage upon the land other than appellant's and the Dundee mortgage.

Eli Harvey testified as follows: "Have known Scott thirty or forty years. We talked about Alfred's business; that he had bought my farm, and how it was secured. This was in 1880 or 1881, before Christmas. I told him I had some of the notes. He just observed, ' Has not Butterfield got some

of these notes?'" Again he testified, that after the crash came Scott said "Hasn't Mr. Butterfield some of those notes?" I said yes." This testimony, the appellee contends, shows notice of the continued existence of such mortgage. The last conversation occurred after the execution of the appellant's mortgage, and it does not appear that the first did not. If, however, both occurred before, they fail to show such notice. It will be borne in mind that Alfred testified that he assured Scott at the time he took the mortgage, that there was no mortgage upon the land other than the Dundee mortgage, and it is not disputed that Scott, before accepting such mortgage, examined the record and knew that the appellee's mortgage had been released. In view of these facts, the mere statement of Eli Harvey that he talked with Scott and informed him that he had sold his land to Alfred Harvey, and how it was secured, does not show notice to Scott that after the release the mortgage continued to secure the unpaid portion of the debt. Nor does the fact that he was informed that some of the notes were unpaid charge him with notice that a mortgage which he knew had been released continued to secure them. The debt may exist without the mortgage, and as the release of record presumptively destroys the lien, notice of the existence of the debt in such case does not charge any person with notice of the continued existence of the mortgage. In addition to this Eli Harvey, in response to questions propounded to him by the court, testified: "I don't think I ever had any talk with Taylor about the second mortgage. I don't think I told Scott anything about the second mortgage. I never talked with any of the bank officers about the mortgage, or that the old one should stand until the new one was made."

This statement must be taken in connection with the other statements of the witness, and, when thus considered, they utterly fail to show that any notice was given the appellant of the continued existence of this mortgage at the time the appellant accepted its mortgage, and as there was no other evidence tending to establish such fact, it follows that the find-

ing was not supported by the evidence, and that the court, for this reason, erred in overruling the motion for a new trial. The judgment should, therefore, be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things reversed, at the appellee's costs, with instructions to grant a new trial.

Filed Feb. 14, 1885. Petition for a rehearing overruled April 25, 1885.