## INTERNATIONAL BUILDING AND LOAN ASSOCIATION *v.* WATSON ET AL.

[No. 19,811.    Filed May 20, 1902.]

HUSBAND AND WIFE.—*Mortgage of Wife's Property.—Suretyship.—Defense.—Cross-Complaint.*—A cross-complaint by a married woman to an action to foreclose a mortgage, setting up the defense of suretyship, and seeking to have the mortgage adjudged void as to her, and her title in the mortgaged real estate quieted, is not bad for failure to allege that the defendant had knowledge that she was executing the mortgage in controversy as surety, and not as principal. *pp. 510, 511.*

SAME.—*Foreclosure of Mortgage on Wife's Property.—Suretyship.—Estoppel.—Pleading.*—Where in an action to foreclose a mortgage against a husband and wife on the wife's separate property the wife sets up the defense of suretyship, and it appears that she has in any manner legitimately estopped herself from making such defense, such estoppel must be specially pleaded by plaintiff. *p. 511.*

PRINCIPAL AND AGENT.—*Mortgages.—Husband and Wife.—Suretyship.*—One who collected dues for a building and loan association and forwarded the same to the home office, and, occasionally, at the instance of the borrower, filled out applications for loans, and sent them to the home office, is not an agent of the company so as to bind it with knowledge that money loaned to a married woman on her separate real estate was borrowed solely for the purpose of paying her husband's debts. *pp. 511–515.*

SAME.—*Proof of Agency.*—Where notice or knowledge is sought to be imputed to the principal through the agent, it is essential and requisite that such agency or authority to act for the principal be first proved either by positive or circumstantial evidence, at least to the extent of establishing a *prima facie* case of such agency. *pp. 515, 516.*

From Adams Circuit Court; *D. D. Heller*, Judge.

Suit by the International Building and Loan Association against Augusta M. Watson and husband to foreclose a mortgage. From a judgment in favor of defendants, plaintiff appeals. *Reversed.*

*W. N. Harding*, *A. R. Hovey*, *C. S. Wiltsie*, *C. J. Lutz* and *S. Peterson*, for appellant.

*J. T. Merryman*, for appellees.

JORDAN, C. J.—This case was transferred from the Appellate Court to the Supreme Court under act of March 13, 1901. Appellant, the International Building & Loan Association, is a corporation whose domicil is at the city of Indianapolis, Indiana. As a part of its business, it conducted a loan department, and was engaged in loaning money on real estate security throughout the State. Augusta M. and Lawrence W. Watson, appellees, are husband and wife. On February 6, 1895, appellant claims to have loaned to Augusta M. Watson $500, which loan is evidenced by a bond executed to appellant by her and her said husband, and secured by a mortgage executed by them on real estate owned by the wife, situated in the town of Geneva, Adams county, Indiana. Appellant's complaint in this action embraces two paragraphs. By the first paragraph it sought to recover a personal judgment against these appellees on the bond above mentioned, and a foreclosure of said mortgage. Augusta M. separately answered this paragraph of the complaint by (1) a general denial; (2) that she was a married woman and the owner of the mortgaged premises at the time she executed the bond and mortgage in suit, and that she executed each as the surety for her said husband, and that no part of the consideration was ever received by her for her own use or for the betterment of her separate estate, and that all of the consideration was received and used by her husband in the payment of his debts; (4) payment. The fifth paragraph of her answer was a cross-complaint, in which she alleged substantially the same facts set up in her answer in respect to her suretyship, and thereby sought to have the mortgage and bond adjudged void as to her, and her title in and to the mortgaged real estate quieted. Appellant replied to appellee's answer by a general denial only, and hence, so far as its reply was concerned, tendered no issue of estoppel. An answer in two paragraphs was filed to the cross-complaint, the first being a general denial; the second contained averments in the nature of a special denial

and also set up affirmative matter in estoppel, in substance
and to the effect, that appellee Augusta M., in order to in-
duce appellant to make her the loan in question, made and
delivered to it an application, whereby, under her oath, she
stated and represented that the loan which she applied for
and sought to obtain was for her own use and benefit, and
for the purpose of paying and discharging her own in-
debtedness; and it is further averred that, believing such
statements and representations to be true, and relying there-
on, it made the loan to her, and paid over the money to her,
etc.    Appellee Mrs. Watson replied to this answer to her
cross-complaint: (1) General denial; (2) that appellant,
at the time it loaned the money, had full knowledge and
notice that the same was borrowed for the benefit of her
husband, and for the purpose of paying his debts, and that
the bond and mortgage in controversy were accepted by ap-
pellant with the full knowledge of all these facts, etc.  There
is no averment in the second paragraph of answer to the
cross-complaint to the effect that appellant had no notice or
knowledge that the representations and statements made by
the appellee in her application that the money which she
sought to borrow was for her own use and benefit were not
true.  As the paragraph stands unchallenged in this appeal,
therefore as to whether it is sufficient in all respects as an
estoppel we need not and do not decide.  Appellant unsuc-
cessfully demurred to the cross-complaint, and contends that
this pleading is bad.  The only infirmity urged against the
cross-complaint is that there is no averment therein to the
effect that appellant had knowledge that she was executing
the bond and mortgage in controversy as surety, and not as
a principal.  This was not required.  The facts set up in
the cross-complaint fully disclose her disability under the
statute (§6964 Burns 1901, §5119 Horner 1901) to enter
into the contract in suit as a surety for her husband.  In
order to maintain her cross-action it was not necessary,
therefore, to allege, that appellant had notice that she exe-

cuted the instruments in dispute as a surety only. If she had in any manner legitimately estopped herself from asserting the alleged invalidity of the contracts in question on the ground that she, a married woman, had entered into the same as a surety merely, such matter of estoppel was required to be set up by appellant as a defense, for the rule is that facts creating an estoppel to be available must be specially pleaded. *Center School Tp.* v. *State, ex rel.,* 150 Ind. 168.

In *Trimble* v. *State, ex rel.,* 150 Ind. 154, 57 Am. St. 163, this court said: "The disability as to suretyship, imposed by the statute upon a married woman, must be considered in connection with another provision of the same act, to the effect that she shall be bound by an estoppel *in pais,* and no construction ought to be given to this exception by the statute of her ability to contract, as will place in her hands a sword to defend her own fraud and imposition on others, instead of a shield for her protection, as the law intended." It follows that the cross-complaint is not open to the objection urged by appellant.

On the trial below, Augusta M., for the purpose of rebutting or disproving the matter of estoppel interposed by appellant based on her sworn representations and statements made by her in her application for the loan, sought to establish that appellant, through its proper and lawful agent, had notice at the time the loan was made that the money was to be borrowed solely for the purpose of paying her husband's debts, and that her relation to the transaction in borrowing the money and in executing the bond and mortgage in suit was that of a surety only. Appellee's husband, when testifying in her behalf on this issue, was permitted by the court, over the objection and exceptions of appellant, to testify to and detail a conversation which he had with one John H. Runyon immediately prior to the time the loan in controversy was applied for and obtained. Runyon, whom appellee asserted was the agent of appellant, resided

at and prior to the time of the loan in the town of Geneva, and was engaged in the practice of the law. He made insurance business and the collection of claims a specialty. Appellees also resided in the same town. It appears that he had for collection some claims against Mr. Watson, the husband, and was pressing him for the payment thereof. The witness Watson, in regard to this conversation with Runyon, and what was said by each therein, testified as follows: "He [Runyon] wanted to know if I could not work some way for to pay him the claims he had for collection. I told him I didn't know how in the world I could raise the money, unless I had a good long time to pay it. He suggested to me why didn't I take out a loan and pay these debts off. I said, 'John, I can not get the money, the property is in my wife's name and we can't get it because a married woman can't mortgage her property to pay her husband's debts,' and he said to me, 'let me work that matter.' I told him to go ahead." The witness further stated that soon after this conversation the loan was made, and that Runyon filled out the blank application which his wife executed to obtain the loan in controversy. Appellant objected to this evidence on the ground, among others, that there was no evidence to show that Runyon was at the time of the conversation the agent of appellant, or in any manner connected with the corporation, or that he was acting as its agent in making the loan in dispute or in making any other loans. The home office of appellant was at the city of Indianapolis, Indiana. Runyon testified on the trial that he was not the agent of appellant, and had nothing whatever to do in loaning its money. Mr. Schurmann, appellant's secretary, also testified that Runyon had no authority to act for the company as its loan agent. The only connection Runyon had with appellant, as disclosed by the evidence, is that it employed him to collect dues, interest, premiums, and fines from some of the members of the association. He at times, it appears,

would undertake to secure loans of money for persons from banks and other companies having money to loan, including appellant. The latter, it seems, furnished him with some printed blank applications to be used by persons who might apply for loans, and he would sometimes solicit persons who were desirous of borrowing money to apply to appellant for the same. If they decided to apply, he would, at their request, fill out their applications, and send them to the home office of appellant. The question of making the loan in each particular instance was a matter to be determined by the agents of appellant in the control and management of its affairs at the home office, after the applications for loans were received. In making out these applications, and for assistance rendered by Runyon in securing loans, he was paid by the applicant, and not by appellant. He filled out the application for appellee in the case at bar, but did so at her instance, and not at the instance of appellant. This is substantially the only evidence upon which appellee relies to establish that Runyon was the agent of appellant in making the loan to her. This, it is insisted, is sufficient to prove that he was its agent, and hence it is contended that it must be held to be bound by the notice, which he, as its agent, received from the husband in the conversation in controversy. In fact, this evidence seems to have been admitted for the particular purpose of proving notice to appellant of the alleged suretyship of appellee through Runyon as its duly authorized agent, and the special finding discloses that the court found that he was its agent in making the loan. It is a familiar rule that, where the acts of an agent are binding on the principal, the representations, declarations, and admissions of such agent made at the same time and constituting a part of the *res gesta* will also bind his principal. But, of course, in such cases, or where notice or knowledge is sought to be imputed to the principal through the agent, it is essential and requisite

that such agency or authority to act for the principal in the transaction in question be first proved by either positive or circumstantial evidence; at least to the extent of establishing a *prima facie* case of such agency. The declarations or admissions, however, of the alleged agent are not competent to prove the agency or authority to act in the premises. It may be asserted as a general rule that it is an irregularity to admit the acts and declarations of an agent, or to admit evidence in respect to notice given to or acquired by him before his agency or authority to act is shown by a legiti- mate proof; however, as the order of introducing evidence upon a trial is to an extent within the sound discretion of the trial court, subsequent proof of such agency or authority will suffice, and thereby cure the irregularity of admitting the acts of the agent prior to introducing the evidence of his agency. But, in the absence of such required proof, any evidence previously introduced relating to the acts, declarations, or knowledge of such agent must be rejected or excluded by the court. The following authorities fully support the rules asserted: Jones on Evidence, §§256, 257, 359 and 360; *Applegate* v. *Moffitt,* 60 Ind. 104; *Trustees, etc.,* v. *Bledsoe,* 5 Ind. 133; *Indiana, etc., R. Co.* v. *Adamson,* 114 Ind. 282.

As a general rule, an agent is one who is either expressly or impliedly invested with authority from his principal to act in his place and in his behalf. It is true that notice to an agent of a corporation relating to any matter or transaction in which he has been given the control or management thereof by such corporation is notice to it. *Pittsburgh, etc., R. Co.* v. *Ruby,* 38 Ind. 294, 10 Am. Rep. 111; *Indiana, etc., Co.* v. *Snyder,* 140 Ind. 647.

It is, however, only where the agent is acting within the scope of his agency when he acquires such knowledge or notice that this rule obtains. Under such circumstances it becomes his duty to act upon the notice, or communicate it to his principal, and if he fails to do so the principal will

nevertheless be bound by the notice. A person may be the agent of a corporation in regard to some of its particular matters or business,—for instance, as serving as an attorney or collecting agent in making collections or in the settlement of claims; but under such circumstances notice or knowledge received or acquired by him in the transaction of such business or matters, or in connection therewith when it relates or pertains wholly to matters or affairs of the corporation other than those in which he is engaged in transacting or over which he has control, can not be legally considered as notice to the corporation, for the reason that such notice, under the circumstances, in the eye of the law is not received or acquired by the agent within the scope of his agency, and hence he is not required to communicate the same to such corporation as his principal. *Farmers Bank* v. *Butterfield,* 100 Ind. 229; *Shaffer* v. *Milwaukee, etc., Ins. Co.,* 17 Ind. App. 204; *Trentor* v. *Pothen,* 46 Minn. 298, 49 N. W. 129, 24 Am. St. 225; *St. Paul, etc., Ins. Co.* v. *Parsons,* 47 Minn. 352, 50 N. W. 240; *Union Nat. Bank* v. *German Ins. Co.,* 71 Fed. 473.

It certainly can not be controverted that, if Runyon was the agent of appellant in making or negotiating the loan to appellee, notice received by him within the scope of his agency to the effect that she was to become the surety of her husband would in law have been notice to appellant of such fact, and evidence of such notice would have been competent for the purpose of rebutting the estoppel which appellant interposed under its answer. But can it be asserted that there is any legitimate evidence to show that Runyon had any connection with the matter of making the loan in controversy, or that the same was under his control as the agent of appellant? It is true that he served the latter at times as its attorney or collecting agent in collecting money for it, such as dues, premiums, and fines due from some of its members; but authority to make collections for it would not necessarily imply authority to make or negotiate loans.

The further facts that Runyon, who, as it appears, was to some extent engaged in securing loans for persons from banks and other loan companies, including appellant, and that he would fill out the applications for such loans, for which service he was paid by the applicant, and that he filled out the application made by the appellee for the loan in controversy, certainly can not be said to establish that he was the agent for appellant in loaning its money or in making the loan to appellee. Under the circumstances in filling out the application for appellee, if he acted as the agent for any one, it was for her, and not for appellant. As there is an entire absence of evidence to prove the agency of Runyon, his declarations and what was said to him by appellee's husband in the conversation introduced in evidence on the trial were wholly incompetent, and ought to have been excluded.

For the error of the lower court in admitting this evidence the judgment rendered against appellant on the issues tendered and joined on the first paragraph of the complaint and also on appellee's cross-complaint is reversed, and the cause remanded, with instructions to the lower court to grant appellant a new trial in respect to these issues, with leave to reform the same, if desired.