**SHO–ME POWER CORPORATION,**
Plaintiff-Appellant,

v.

**CITY OF MOUNTAIN GROVE, Missouri,**
a municipal corporation, et al.,
Defendants-Respondents.

No. 9044.

Springfield Court of Appeals,
Missouri.

March 23, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied April 28, 1971.

Application to Transfer Denied
June 14, 1971.

Gregory Stockard, Jefferson City, E. C. Curtis, Farrington, Curtis & Strong, Springfield, for plaintiff-appellant.

James E. Miller, B. H. Clampett, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendants-respondents.

WILLIAM M. KIMBERLIN, Special Judge.

This is an action to enjoin the respondents, City of Mountain Grove, Missouri, Curt Anderson, its Mayor, and the City Council from selling or otherwise negotiating electric light revenue bonds previously voted by the electorate, and to enjoin the residents from negotiating for the purchase or the construction of an electric trans-

mission and distribution system within the City of Mountain Grove, Missouri. The parties will be referred to in this opinion as they were in the trial court. The defendants filed a motion to dismiss the plaintiff's petition for failure to state a claim upon which relief can be granted. The trial court sustained the motion and dismissed the petition with prejudice. This appeal ensued. Since the sufficiency of the petition is in issue, the allegations will be stated at length.

The petition stated that the plaintiff was a corporation duly organized and existing under and by virtue of the Rural Electric Co-operative Laws of the State of Missouri; that the defendant, City of Mountain Grove, Missouri, was a municipal corporation and city of the third class; that the remaining defendants were the mayor and city council of said city. The petition alleged that in January of 1965, the City, by ordinance, duly approved by the electors of the city, granted a franchise to plaintiff to construct, operate and maintain an electrical transmission system within the corporate limits of said city for a period of fifteen years and that said franchise is still in full force and effect; that under date of February 1, 1965, the defendant, city, entered into two separate contracts with the plaintiff obligating itself to purchase from plaintiff for a period of fifteen years thereafter, all of the electrical energy which might be necessary for and used in the operation of the municipal pumping system and the lighting of the streets and alleys of the city. Since that time, plaintiff has owned and operated and is now operating an electrical transmission and distribution system within the corporate limits of the city, and has carried out its obligation under the contract by supplying the inhabitants of said city with electricity; that on November 28, 1967, the electorate of the city voted bonds for the purpose of "purchasing or constructing" an electric light distribution system for said city; that the city, through its officials, contracted for the sale of said bonds and are

threatening to sell the bonds for the purpose of purchasing or constructing an electric light distribution system; that by entering into the said contracts, the city elected to purchase from plaintiff all of its requirements for electrical current for the full term of said contracts and, therefore, the sale of the bonds and the purchase or construction of electric distribution system would, by reason of the election of the city to exercise its statutory power to purchase from plaintiff all of its requirements for electrical current, be illegal and void and in violation of the constitutional and statutory powers of the city.

It is further alleged that § 88.613 RSMo 1959, V.A.M.S., which authorizes the city to erect and operate electric light works, does not grant to the city the power to erect and operate an electric light works at the same time the city is bound by contract to purchase its electrical needs from another company and, therefore, the city has no power to purchase or erect its own electric light works so long as its contracts with the plaintiff are in force and effect; that if § 88.613, supra, is construed to grant to the city the power to purchase or erect its own electrical transmission and distribution system at the same time it is under contract to purchase its electrical needs from the plaintiff, such contracts would be thereby impaired in violation of art. 1, § 10 of the Constitution of Missouri, V.A.M.S., and in violation of the Fourteenth Amendment of the Federal Constitution.

It is further alleged the procedure of calling the election and submitting the proposition to the voters was not authorized by the statutes of Missouri and the ordinance authorizing same is unlawful and void; that from and after granting to the plaintiff the franchise and after the date of the bond elections, the city, through its officials, on repeated occasions requested and required the plaintiff to make changes and improvements in the plaintiff's electrical distribution system well knowing that the defendant, City of Mountain Grove,

intended to construct its own electrical distribution system and to operate the same in competition with plaintiff, all of which requests and requirements were performed by plaintiff at great expense; that the defendant, city, is now estopped to construct an electrical distribution system as long as the plaintiff is continuing to operate such a system in said city; that plaintiff will suffer irreparable injury and damage if the city carries out its proposal and that the plaintiff has no adequate remedy at law.

The plaintiff advanced several theories of recovery in the trial court. However, it has narrowed the controversy to only one issue. Plaintiff in its reply brief at page 5 states as follows:

"Let us again set the record straight. We do not rely in this case upon any sort of implied agreement not to construct a competing plant. We do not rely upon an implied election not to compete. We do rely upon the lack of statutory power in the defendant city to build a plant while under contract with plaintiff for all its municipal needs. This question is discussed to the best of our ability in our brief. The discussion, argument and authorities cited stand totally unanswered before this court."

Upon oral argument, the plaintiff reiterated this contention. Hence, we will not labor the cases cited in the briefs dealing with implied limitations of power. We are now concerned solely with the question of whether the City of Mountain Grove, by reason of the contracts with plaintiff has exhausted its statutory power, or by reason of its conduct is estopped to erect and construct an electrical system of its own under § 88.613, supra.

Plaintiff, in its brief, frankly conceded that it can point to no Missouri authority specifically holding that § 88.613, supra, will be construed as plaintiff contends that it should be construed; that the question here involved is simply one of first impression in this state as at no previous time has it been asserted that the power to

contract for electricity and the power to produce electricity are alternate powers; that when the city contracts for the purchase of electricity, it has elected its method of securing the service and may not during the terms of the contract produce electricity on its own.

The contention of the plaintiff requires an interpretation of § 88.613, supra. It provides as follows:

"1. The council may provide for and regulate the lighting of streets and the erection of lamp posts, poles and lights therefor, and shall have power to make contracts with any person, association or corporation for the lighting of the streets and other public places of the city with gas, electricity or otherwise; provided, that no such contract shall have any legal force until the same shall have been ratified by a two-thirds majority of the qualified voters of said city, voting at an election held for that purpose.

"2. The council shall have the right, also, to erect, maintain and operate gas works, electric light works or light works of any other kind or name, and to erect lamp posts, electric light poles, or any other apparatus or appliances necessary to light the streets, avenues, alleys or other public places, and to supply private lights for the use of the inhabitants of the city and its suburbs, and to regulate the same, and to prescribe and regulate the rates to be paid by consumers * *."

■ In interpreting the above statute, several rules of statutory construction must be considered. "[T]he rules of statutory construction require that we give every word, phrase, and sentence in the statute some meaning, unless it is in conflict with legislative intent. Anderson v. Deering, Mo.App., 318 S.W.2d 383; * * * We are not to presume that the legislature intended to use superfluous or meaningless words in a statute." Bussmann Manufacturing Co. v. Industrial Commission, Mo. App., 335 S.W.2d 456, 460(8, 9). The gen-

eral rule is the use of "shall" is mandatory and not permissive. State ex rel. Hopkins v. Stemmons, Mo.App., 302 S.W.2d 51, 54(4).

With these principles in mind we now analyze the statute. Paragraph 1 of the statute states the city may provide for, regulate and erect lighting facilities and shall have the power to contract therefor. Paragraph 2 states the council *shall* have the right, *also*, to erect, maintain, and operate electric light works that are necessary to supply lights for use of the inhabitants of the city and its suburbs. Applying the above rules of statutory construction, we must accord to each paragraph some meaning and not presume the legislature intended the language at Paragraph 2 to be superfluous and meaningless. If a city did, by contract, provide for the lighting of streets under Paragraph 1, paragraph 2 plainly and unequivocally reads that the city shall also have the right to erect and maintain an electrical transmission system of its own.

The word "also" has several meanings. It is defined in Webster's New International Dictionary, Second Edition, Unabridged, as "in addition"; "as well"; "besides"; "too." The Supreme Court of this State in the case of Cain v. Courter, Mo., 215 S.W. 17, 19–20, has approved the above definitions and meaning of "also."

■ Whether the word "also" is construed to mean "besides," "in addition," or "as well," Paragraph 2 above grants the city the power, under the circumstances in this case, to erect and operate its own electrical system. The two paragraphs are not separated by the word "or"; they are not in the alternative. There is no language in the statute requiring the city to elect between Paragraph 1 and Paragraph 2. The entering into contracts by the city providing for the furnishing of all the electrical current is not a rejection of the right or power of the city to also erect and maintain an electrical transmission system of its own. The former does not defeat the latter. If the legislature had intended that

a city, by entering into a contract, under Paragraph 1 would exhaust its statutory powers, it could have very simply and easily so provided in the statute. This the legislature did not do and we cannot assume it intended to do so.

Plaintiff cites the case of Kansas City Power & Light Co. v. Town of Carrollton, 346 Mo. 802, 142 S.W.2d 849 to fortify its position. A careful reading of this case will reveal that Section 26 of the ordinance in question stipulated in substance the Town of Carrollton would not erect or maintain a water plant or light plant during the tenure of the franchise. No such provision is involved in this case and the Carrollton case does not aid the plaintiff.

Plaintiff relies heavily on the very old United States Supreme Court case of Skaneateles Waterworks Co. v. Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 46 L.Ed. 585 (1902). This case dealt with the interpretation of the power of the Village under the New York statutes of 1873 and of the Village ordinances. We rule this case is not controlling on its facts and it does not aid in the construction of § 88.613, supra. The other cases cited by the plaintiff are in the same category.

While the case of State ex rel. City of Mansfield v. Crain, Mo.App., 301 S.W.2d 415, cited by both plaintiff and defendants, is not precisely in point as the interpretation of § 88.613, supra, was not involved, the following quotation from the opinion does reflect the thinking of the Missouri Judiciary on the implied limitations of power of municipalities. It reads as follows at p. 419:

"The injunction petition does not allege, nor do the attached exhibits show, any *express agreement* that the franchise is *exclusive*, or that the city *expressly agreed not to compete* with Se-Ma-No. Under such circumstances, there can be no *implied* limitation upon the right of the City of Mansfield to construct and operate a power plant. Cases specifically so holding are Memphis Electric Light,

Heat and Power Co. v. City of Memphis, 271 Mo. 488, 196 S.W. 1113; City of Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 24 S.Ct. 43, 48 L.Ed. 217; Kansas City Power & Light Co. v. Town of Carrollton, 346 Mo. 802, 142 S.W.2d 849. These cases review many other authorities on the subject."

We glean from this case that the limitation of a right or power of a municipal corporation should not be readily implied. Certainly this should be true of a statutory power once granted by the General Assembly.

To illustrate a fallacy in plaintiff's contention, suppose the City of Mountain Grove more than doubled in population during the tenure of the contracts (this has occurred in many areas) and the plaintiff could not supply all of the electrical current necessary to serve all of its inhabitants. Could it be said the City has exhausted its statutory power and is stymied to build its own electrical system to supply current to all of its inhabitants? We think not.

Absent a contract, it must be conceded by the plaintiff that the city has the power and right to build its own system. Assume the city council entered into a two-year contract with plaintiff, that at the expiration thereof the city built its own system and operated it for two years and thereafter the personnel of the city council changed and it was again decided to enter into another two-year contract with the plaintiff or some other power corporation. Could it be said the statutory power of the city would shift back and forth depending upon the whim of the city council? We think the General Assembly in enacting the statute did not so intend. The vested statutory powers of municipalities should not be granted and taken away in such a manner.

Plaintiff contends the city, by its conduct, is estopped to place in operation an electrical distribution system in competition with plaintiff, and cites cases announcing the three essential elements to constitute

estoppel in pais. State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 351–352, 53 S.W.2d 394, 399–400(10), 89 A.L.R. 607, 616(11) (banc), and Board of Public Works of Rolla v. Sho-Me Power Corp., 362 Mo. 730, 737–738, 244 S.W.2d 55, 60(9) (banc), set forth the following essentials of estoppel in pais:

"To constitute estoppel in pais, three things must occur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act."

■ Although equitable estoppel is ordinarily not applicable and usually cannot be invoked against a city; nevertheless, it may be invoked in exceptional cases where required by right and justice, or to prevent manifest injustice. State ex inf. McKittrick ex rel. City of Springfield v. Springfield City Water Co., 345 Mo. 6, 21, 131 S.W.2d 525, 532–533(10) (banc); State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., supra, 53 S.W.2d at 400(11); Murrell v. Wolff, Mo., 408 S.W.2d 842, 851(9). But the doctrine must be applied by courts with great caution where a municipal corporation is concerned. State ex rel. Cainsville Reorganized School District No. 1 v. Tomes, Mo.App., 299 S.W.2d 892, 897(5); State ex inf. Taylor ex rel. Schwerdt v. Reorganized School District R–3, Mo.App., 257 S.W.2d 262, 268 (7).

Plaintiff alleges that after the November 28, 1967, election the city has on repeated occasions requested and required plaintiff to make changes and improvements in plaintiff's distribution system well knowing that the city intended to construct its own distribution system all of which requests and requirements were performed by plaintiff at great expense to plaintiff.

There is no allegation that the city by act or word indicated any intention not to erect a plant of its own. The mere fact that the city requested changes or improvements in plaintiff's distribution system is not inconsistent with the city's position to now build its own system. This could be entirely consistent with plaintiff performing its contracts or making the improvements voluntarily. The requests for improvements and changes are not a contradiction or repudiation of the city's proposed plan to build its own system. The allegations of the petition fall short of the necessary elements to constitute estoppel in pais and this point is ruled against the plaintiff.

It is the considered opinion of this court and it holds that the statutory power of the City of Mountain Grove to build its electrical system was not exhausted by virtue of the contracts with plaintiff; that the city is not estopped by its acts and conduct and the judgment dismissing the injunction petition with prejudice for failure to state a claim upon which relief can be granted is affirmed.

TITUS, P. J., and HOGAN, J., concur.

STONE, J., not sitting.