This appeal was taken from a September 13, 1978, order of the circuit court in a declaratory judgment action brought by the Mobile County Republican Executive Committee and its chairman against the appointing board established by § 17-6-1, Code of Alabama 1975. The appointing board consists of the Sheriff, Probate Judge and the Clerk of the Circuit Court of Mobile County, Alabama. As provided in § 17-6-3, Code of Alabama 1975, the defendant, Tom Purvis, Sheriff of Mobile County, was unable to serve as an appointing board *Page 756 
member because he was a candidate for renomination to that office in the September 5, 1978, Democratic Primary Election. Jeff C. Mims was named to serve on the appointing board in Sheriff Purvis's absence as provided in § 17-6-4, Code of Alabama 1975, and was made a party defendant in this action.
The Republican Executive Committee contends that it submitted a list of suggested election officers for the primary election as allowed by § 17-16-17, Code of Alabama 1975; and that the appointing board failed, neglected or refused to consider this list in the appointment of election officers. It contends that Alabama law requires the appointing board to name election officers for primary elections from lists provided by the respective political party executive committees and in equal proportion to the number of political parties participating in the primary election.
§ 17-16-17 controls this issue as it relates to the appointment of election officers in primary elections. This statute provides:
 "Each candidate for nomination may, at least 25 days before the primary, present to the county executive committee of his party a list of election officers desired by him for any one or more of the districts, wards or precincts, and his county committee shall, so far as practicable, make up, from the list so presented to it, a list of names of election officers, six in number, for each district, ward or precinct, which it will nominate to the appointing board of the county for appointment as officers to conduct the primary election. The county committee shall present the list so made up by it to the appointing board of the county which appoints the election officers to conduct elections for state and county officers in November, or at any other lawful time, which appointing board, from the list so presented to it by the county committee, shall, if there be on said list the names of sufficient persons who are legally eligible, select and appoint the officers to conduct the primary election, observing the above rule as to representation wherever more than one party enters the primary; and, in the latter case, if a county committee has not given a sufficient number of names for a box, then the appointing board shall supply the deficiency from electors of that party. In the event the persons selected as officers fail to appear at the polling place on the day of the primary election at least one hour before the polls are scheduled to open, then their places shall be filled by such of those who have been named by such appointing board as do appear; and, in the event none so named appear by then, the voters present and qualified to participate in such primary election may, from among themselves, select officers to conduct such election in such district or precinct, and such substituted persons shall have the authority to conduct such elections and to be paid for their service in the same manner as if they had been originally appointed. All officers serving in such primary elections shall take the same oath required to be taken by officers of regular state elections and shall be subject to the same restrictions, limitations, penalties and conditions."
The trial court held that § 17-16-17 was directory only and did not require the appointing board to appoint election officers in equal proportions from the lists submitted by the county executive committees. The trial court held, in part, that:
 ". . . the appointing board, and their successors in office, shall give due consideration to each such list so presented to it, and in choosing the election officials at any primary or general election, exercise its discretion as to the selection of such election officers. . . ."
We affirm, but disagree with the trial court that § 17-16-17 controls the appointment of election officers who serve in general elections.
§ 17-16-17 admonishes the appointing board to appoint the election officers while ". . . observing the above rule as to representation wherever more than one [political] party enters the primary. . . ." The statute, however, is devoid of any rule *Page 757 
to which this language can refer, as the trial court observed.
The Republican Executive Committee concedes, in brief, that this statute is ambiguous and subject to a number of interpretations; but asserts that if properly construed, the statute would mandate that appointments of election officers in primary elections be equally divided between candidates submitted by each political party participating in that primary.
Of course, when the plain meaning of a statute can be gleaned from its words, it should be so construed. State v. CommercialLoan Co., 251 Ala. 672, 38 So.2d 571 (1949); Van Houtan v.Black, 191 Ala. 168, 67 So. 1008 (1915). But where, because of ambiguous language or otherwise, the meaning is not clear on the face of the statute, we must determine its meaning. To accomplish this, courts frequently and properly look to the legislative purpose in enacting the legislation. State v. UnionTank Car Co., 281 Ala. 246, 201 So.2d 402 (1967).
One of the stated legislative purposes of § 17-16-17 is ". . . to allow candidates to nominate election officers. . . ." See Preamble, Act No. 1196, 1975 Acts of Alabama, approved October 10, 1975, Vol. IV, page 2349 (predecessor to § 17-16-17).
The legislature's method of accomplishing this purpose is by allowing candidates to nominate prospective election officers through their respective county executive committees. The county executive committee serves as a conduit between the nominating candidates and the appointing board. The lists presented by the county executive committees are the means by which the candidates forward their nominations to the appointing board for consideration. Such nominations, when presented to the appointing board, must be considered by the board in making its selections. This, however, is the only mandatory provision of § 17-16-17 regarding the appointment of election officers.
The distinction between a mandatory provision and one which is only directory is that when the provision of a statute is the essence of the thing to be done, it is mandatory. Under these circumstances, where the provision relates to form and manner, or where compliance is a matter of convenience, it is directory. Rodgers v. Meredith, 274 Ala. 179, 146 So.2d 308
(1962); Board of Education of Jefferson County v. State,222 Ala. 70, 131 So. 239 (1930). In making this determination, it is legislative intent, rather than supposed words, art such as "shall," "may" or "must," which ultimately controls. Morgan v.State, 280 Ala. 414, 194 So.2d 820, appeal dismissed, cert. denied, 389 U.S. 7, 88 S.Ct. 47, 19 L.Ed.2d 6 (1967). See alsoBelcher Oil Co. v. Dade County, 271 So.2d 118 (Fla. 1972);Barton v. Atkinson, 228 Ga. 733, 187 S.E.2d 835 (1972); Sho-mePower Co. v. City of Mountain Grove, 467 S.W.2d 109 (Mo.App. 1971).
There is no requirement, stated or which may fairly be implied, from the language of the statute that the appointing board is required to select the election officers to serve in primary elections from the respective executive committees' lists in any particular ratio or proportion. The appointing board, of course, may not disregard such lists in making appointments; but, so long as it does not abuse its discretion in selecting the election officers from among the candidate's nominations, it is in compliance with § 17-16-17.
§ 17-6-6 Code of Alabama 1975, controls the manner of appointment of election officers who serve in general elections. It provides:
 "Each political party or organization having made nominations may, by the chairman of its state or county executive committee or nominees for office, furnish the appointing board a list of not less than three names of qualified electors from each voting place, and from each of said lists an inspector and clerk shall be appointed for each voting place; provided, that where there are more than two lists filed, the appointments shall be made from the lists presented by the two political parties having received the highest number of votes in the state in the next *Page 758 
preceding regular election, if each of said parties present a list."
On appeal, the Republican Executive Committee argues that §17-6-6 mandates the appointment of election officers for the forthcoming general election composed fifty percent of Democrats and fifty percent of Republicans, since these two political parties received the highest number of votes in the next preceding regular election. We cannot agree.
This statute, like § 17-16-17, is not without ambiguity in its operative effect, although it has been held constitutional on its face. Hadnott v. Amos, 295 F. Supp. 1003 (M.D.Ala. 1968), reversed on other grounds, 394 U.S. 358, 89 S.Ct. 1101,22 L.Ed.2d 336 (1969). Section 17-6-6 allows any ". . . political party or organization having made nominations. . . ." to submit a list of suggested election officers but provides that appointment be made from ". . . lists presented by the two political parties having received the highest number of votes. . . ." If appointments were to be made on an equal proportionate basis between the two political parties receiving the most votes, as the Republican Executive Committee argues, why would the legislature permit the exclusion from consideration of persons submitted by all other political parties? We do not believe that the legislature intended to require the appointment of election officers in equal proportion nor did it establish any mathematical formula for such appointments. § 17-6-6, as we read it, simply requires the appointing board to make its selection of election officers from lists provided by the two major political parties.
We agree with the appellants that the statute does not require that consideration be given to the number of votes cast on behalf of a particular party. The purpose of this legislation, in our view, is to insure that elections be honestly conducted and does not compel the distribution of election officers among political parties in proportion to their voting strength. See State v. Board of Election Com'rs ofMilwaukee, 240 Wis. 204, 3 N.W.2d 123 (1942).
We also agree with the Republican Executive Committee that Act No. 812, 1965 Acts of Alabama, Vol. II, page 1515, applicable only to Mobile County, in no way changes the method of appointing election officers as otherwise provided by law.
The result reached by the trial court is consistent with our interpretation of the applicable law. Its judgment is, therefore, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.