This is an appeal by plaintiffs below, James E. Wilson and others, from the following judgment entered in behalf of Wayne Teague, State Superintendent of Education, and others:
 "ORDER
"This is a class action filed by persons who are employed as faculty members of technical institutes which are under the control of the Alabama State Board of Education. Class representatives seek on behalf of themselves and the class which they represent entitlement to backpay for the 1977-78 school year. On July 23, 1980 this Court certified this action as a class action under Rule 23 (b)(3), Alabama Rules of Civil Procedure and directed the Plaintiffs to deliver a copy of a notice to all potential class members. The Court record reflects that no potential class member chose to opt out of the class.[1] On February 10, 1980 the Plaintiffs amended their complaint to add a count which sought relief based on an equal protection claim. This amendment was allowed by the Court. By agreement of Counsel for the parties, this matter was submitted to the Court on the basis of the pleadings, stipulated facts and briefs filed by the parties.
"The Plaintiffs' claim is premised on a provision of the 1977-78 Appropriations Act, Act No. 637, passed by the Alabama Legislature during the Regular Session of 1977. The portion of the Appropriations Act relied on reads as follows:
 "`The salary schedule for 1977-78 for vocational-technical colleges shall be adjusted by the State Board of Education to make it equal to the salary schedule of junior colleges for 1977-78 for appropriate ranks of certification.'
"In essence, the Plaintiffs claim that the Alabama State Board of Education failed to comply with the provisions of this legislative mandate contained in the Education Appropriations Act. Based on the pleadings, *Page 1224 
the stipulation of facts, and the briefs of the parties, the Court now enters the following order.
 "FINDINGS OF FACT
"1. During the 1976-77 school year, the salary schedule for presidents, deans, business managers and faculty members employed in junior colleges reflected higher salaries than the salary schedule for presidents, deans, business managers and faculty members employed in technical colleges.
"2. At this time there were four salary ranks for junior college presidents, deans and business managers and faculty members: (1) Rank I (master's degree); (2) Rank II (master's degree plus 30 additional graduate hours); (3) Rank III (master's degree plus 60 additional graduate hours); and (4) Rank IV (Ph.D). In the technical colleges the presidents, deans and business managers were not ranked. In the technical schools there were two faculty ranks: (1) Rank I (master's degree) and (2) Rank II (non-master's degree). In addition the salary schedule for presidents, deans and business managers of junior colleges and technical colleges was based on the size of the respective institution.
"3. The Education Appropriations Act (Act No. 637, Reg.Sess. 1977) for the 1977-78 school year contained the following language at Section 1:
 "`There is hereby appropriated for the support of public education in Alabama for the fiscal year ending September 30, 1978 and for the public debt, to be paid out of funds specified in subsection (a) of Section 2 of this Act, the amount specified in Section 3 to 7, inclusive.'
"At Section 3.A.19. the Act provided:
 "`For the operation and maintenance of the Vocational Technical Schools listed below, to be distributed in accordance with a formula adopted by the State Board of Education . . . Of the amount appropriated above for the fiscal year ending September 30, 1978, the following salary increases shall be granted by ranks in addition to salary now received and all salary increments due to all full-time professional staff: Class B not less than one thousand five hundred seven dollars ($1,507) per annum; and Class A not less than one thousand six hundred sixty dollars ($1,660) per annum for twelve months employment. The salary schedule for 1977-78 for vocational-technical colleges shall be adjusted by the State Board of Education to make it equal to the salary schedule of junior colleges for 1977-78 for appropriate ranks of certificates. Personnel at vocational-technical colleges shall receive equity adjustments in their salary based on the new salary schedule in addition to the salary increases provided hereinabove.'
"4. Act No. 637 (Reg.Sess. 1977) was approved by the Governor on May 20, 1977 with an effective date of October 1, 1977 (Section 17, Act No. 637 (Reg.Sess.)).
"5. On August 30, 1977 the Alabama State Board of Education adopted a salary schedule for all two-year postsecondary institutions under its control. At this time all Presidents were placed at the top of the salary schedule in accordance with the recommendation of the State Superintendent made on July 25, 1977.
"6. The August 30, 1977 resolution which adopted salary schedules for junior and technical college faculty established Ranks IV, III, II, I/A and I/B and C. Technical college faculty had only Ranks I/A and I/B available to them and their salaries were equivalent to the salary of junior college faculty at Ranks I/A and I/B.
"7. Also on August 30, 1977 the State Board of Education instructed the State Superintendent of Education to appoint a committee to develop certification standards for technical college instructors equivalent to Ranks II, III, and IV for the junior college faculty.
"8. On November 22, 1977 the State Board of Education approved faculty certification requirements for technical college faculty at Ranks II, III and IV.
"9. The November 22, 1977 resolution provided that qualified technical school faculty *Page 1225 
could be certified up to Rank II effective September 1, 1977 and up to Ranks III and IV effective September 1, 1978. Technical School faculty qualifying for Rank II during the 1977-78 school year were paid at Rank II for the full 1977-78 school year.
"10. On September 12, 1978 the State Board of Education approved retroactive salary increases for 1977-78 for those technical school faculty who qualified for Ranks III or IV on the condition that the salary increases legally could be funded from appropriations for the 1978-79 school year.
"11. On September 14, 1978 the attorney for the State Board of Education informed the State Superintendent of Education that the retroactive salary increase proposed by the State Board of Education on September 12, 1978 constitutionally was not permitted because the action of the Board would authorize expenditure of appropriations for a previous year's obligation.
 CONCLUSIONS OF LAW
"12. The parties agree that the claim for backpay rests solely on an interpretation of the previously quoted provision of Act No. 637 (1977 Alabama Legislature, Regular Session). Thus the Court is confronted with a question of statutory interpretation. Of course, when the language of a statute is clear and unambiguous, there is no room for construction, and the clearly expressed intent of the legislature must be given effect by the Court. Employees' Retirement System of Alabama v.Head, 369 So.2d 1227 (Ala. 1979). However, where the meaning of a statute is not clear on its face, the Court must determine the meaning of the statute by finding the intent of the Legislature. Mobile County Republican Executive Committee v.Mandeville, 363 So.2d 754 (Ala. 1978). The intention of the Legislature may be determined by examining the statute as a whole; State ex rel. v. Strickland, 289 Ala. 488, 268 So.2d 766
(1972); thus, the Court may look to other provisions of the same Act as an aid to construction. Abramson v. Hard, 229 Ala. 2,155 So. 590 (1934).
"13. Based on these principles it is clear that the Legislature did not intend to require the State Board of Education to create new salary rankings where none previously existed. To hold otherwise would render the Legislature's use of the word `appropriate' meaningless. See Wright v.Cutler-Hamner [Hammer], Inc., 358 So.2d 115 [444] (Ala. 1978).
"14. This is made more obvious by the fact that the Appropriations Act passed by the 1977 Legislature while authorizing salary increases for Ranks I through IV for the junior college faculty, authorized salary increases for technical school faculty only at the previously existing ranks. Had the Legislature intended that the State Board of Education develop new salary ranks for technical school faculty, it most certainly would have appropriated funds for salary increases for additional ranks. The fact that the Legislature did not include additional ranks beyond ranks already existing for the technical schools, convinces this Court that the Legislature intended the State Board of Education to equalize salaries of technical school faculty members only for comparable, existing ranks.[2]
"15. In their amended complaint, the Plaintiffs claim that the decision of the State Board of Education to equalize salary schedules of presidents of technical colleges with the salary schedule of presidents of junior colleges was arbitrary and capricious and denied Plaintiff faculty members equal protection of the law.
"16. The informal transcript of the proceedings of the Alabama State Board of Education for July 25, 1977 reflect that in taking this action the State Board of Education relied on a study of salaries for the Southeast region of the country. This *Page 1226 
study reflected that presidents of comparable institutions in Alabama had salaries lower than that of institutions in other states. This same study reflected that faculty salaries were comparable. The Board's action was premised on this study.
"17. Thus it appears to the Court that the action of the State Board of Education in equalizing institution presidents' salaries was not arbitrary or capricious. The Court also finds that Hughes v. Jefferson County Board of Education,370 So.2d 1034 (Ala.Civ.App. 1979) is dispositive of the equal protection argument raised by Plaintiffs.
"Based on the foregoing Findings of Fact (stipulated by Counsel for all parties) and the Conclusions of law reached by this Court, it is ORDERED, ADJUDGED and DECREED that judgment is hereby entered in favor of the Defendants with costs taxed in accordance with Rule 54, Alabama Rules of Civil Procedure.
"DONE this the 11th day of February, 1982." (Emphasis added.)
We affirm.
After careful review of the record, consideration of excellent briefs of the parties, and hearing well presented oral arguments, we would be hard pressed to improve upon the statement of the case, findings of fact, and conclusions of law made by the learned trial judge, Honorable William R. Gordon. Careful consideration of the evidence and the pertinent law, as was given in this case, resulting, as it did in this case, in a judgment of superior quality, is a great aid to this court in disposing of our appellate case load.
However, we should call attention to the fact that the State Board of Education, acting under the authority granted it by the Legislature, considered and then authorized, beginning in 1978, the full parity ranks sought for 1977 by the faculty members who maintained this action. See § 16-60-111 (repealed by Acts 1982, No. 82-486, § 2, effective May 4, 1982). Thus, the net effect of the judgment below was denial of back pay that would have been due had the trial court ruled favorably to the faculty member class action plaintiffs.
The judgment below is due to be and is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, BEATTY and ADAMS, JJ., concur.
ALMON and SHORES, JJ., not sitting.
[1] "On July 28, 1980 this Court granted the motion to withdraw filed by Plaintiff James E. Wilson."
[2] "The members of the State Board of Education and the State Superintendent also argue that a provision in an appropriations act which requires salary increases is unconstitutional under Section 45 and 71 of the Constitution of Alabama of 1901 since the title of Act No. 637 does not clearly express the contents of the Act. Based on the Court's resolution of the statutory construction question, the Court pre-termits consideration of this Argument."