In re Eliseo J. MATOS and Margarette W. Matos, Debtors.

Eliseo J. MATOS and Margarette W. Matos, Appellants,

v.

GWINNETT BANK & TRUST CO., Appellee.

Civ. A. No. CV85–PT–0927–S.

United States District Court, N.D. Alabama, S.D.

June 26, 1985.

J.N. Holt & Kent Upshaw, Birmingham, Ala., for appellants.

Dannie Ray Davis, Birmingham, Ala., for appellee.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on an appeal from the United States Bankruptcy Court for the Northern District of Alabama. On November 1, 1984, the Bankruptcy Court held that the mortgage involved herein, although recorded in violation of Ala.Code § 35–4–110 (1975), is valid against the debtors-in-possession. On November 27, 1984, the Bankruptcy Court by separate order, granted appellees relief from the stay pursuant to 11 U.S.C. § 362. The Debtors-in-Possession motion for reconsideration was denied, but the Bankruptcy Court stayed foreclosure pending this appeal.

The facts giving rise to this appeal are as follows. The Debtors-in-Possession/Appellants are guarantors on a note held by the Appellee which is secured by a mortgage on real estate. The note is in default; hence a petition for relief from the automatic stay and leave to foreclose. The Debtors, pursuant to 11 U.S.C. § 544, seek to avoid the mortgage on the grounds that it was recorded by the Probate Judge in violation of Ala.Code § 35–4–110 (1975).[1]

---

**1.** Section 35–4–110 provides:

No probate judge shall receive for record or permit the recording of any instrument in which the title to real property, or any inter-est therein, or lien thereon, is conveyed, granted, encumbered, assigned or otherwise disposed of, or any instrument relating to the organization, reorganization or dissolution of

There is no dispute that the instrument lacked the required endorsement, was filed with and received by the probate court, and recorded. The Appellants contend that the mortgage was not recorded in conformity with the statute and its recording is a nullity and does not give constructive notice even though it was placed upon the record. The Appellee contends that a violation of Section 35–4–110 does not invalidate an otherwise valid and recorded conveyance of real property as to anyone and that it gives constructive notice to all.

### Issues Presented On Appeal

Whether a recorded mortgage which is not endorsed in accordance with § 35–4–110 gives constructive notice to subsequent "purchasers."

A. Do the Appellants have the right under § 544 of the Bankruptcy Code, by virtue of their status as debtors-in-possession, to avoid the Appellee's mortgage regardless of whether they have constructive notice by virtue of recording?

B. Does the recording of a mortgage prepared by or for a non-resident give constructive notice if it is not endorsed as required by § 35–4–110?

### A. DO THE APPELLANTS HAVE THE RIGHT UNDER § 544 BY VIRTUE OF THEIR STATUS AS DEBTOR–IN–POSSESSION TO VOID THE APPELLEE MORTGAGE?

■ The Appellee has cited *In re Hartman Paving, Inc.*, 745 F.2d 307 (4th Cir. 1984) in support of its argument that although the Appellants are entitled to claim the powers of a subsequent purchaser for value under § 544(a), those powers do not allow them to avoid the mortgage, because they are not the type of purchasers the law seeks to protect. Although this court notes that the case is analogous to the

instant case, it does not agree with the Fourth Circuit conclusion. Instead, the court finds that the dissenting opinion of Chief Judge Winter is in accord with § 544.

The majority opinion of the Fourth Circuit breaks down when it concludes that the previous knowledge of the debtor is imputed to him as debtor-in-possession. In the instant case, when the Appellants, having actual knowledge of the defective mortgage and being direct parties to the transaction, became the debtors-in-possession, they became vested with the powers and the duties of a trustee in bankruptcy. 11 U.S.C. § 1107(a). Therefore, the Appellants became vested with the rights bestowed on a trustee pursuant to 11 U.S.C. § 544(a). Section 544(a)(3) provides:

§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers

(a) The trustee shall have, as of the commencement of the case, *and without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

\*   \*   \*   \*   \*   \*

(3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

(emphasis added).

As Justice Winter of the Fourth Circuit stated, upon becoming debtors-in-possession, Appellants acquired the status of an *ideal* bona fide purchaser and the rights that such *ideal* creditors have under state law. Such status is "without regard to any [actual] knowledge" the trustee or any creditor had concerning a pre-existing obli-

---

a private corporation, unless such instrument has endorsed on it a printed, typewritten or stamped statement showing the name and address of the individual who prepared the instrument. If the instrument is in part composed of a printed form the person preparing

the instrument shall be the person who filled in the blanks in the form or examined the entries made in such blanks by some other person. (Acts 1965, No. 624, p. 1137, § 1; Acts 1969, No. 121, p. 397; Acts 1971, 3rd Ex.Sess., No. 178, p. 4438, § 1.)

gation of the debtor. The same status is true of the debtor-in-possession; he stands in the same idealized shoes as the trustee without regard to any knowledge he may have.

Accordingly, this court finds that the Appellants' knowledge as parties to the transaction is not imputed to them as debtors-in-possession. Appellants as debtors-in-possession do not, if at all, avoid Appellee's mortgage as debtor; but avoid it, if at all, only in their role as trustee for *all* claimants against the debtor. 11 U.S.C. § 704(4). The Bankruptcy Code makes a distinction between a debtor and a debtor-in-possession, and so must this court.

## DOES THE RECORDING OF A MORTGAGE PREPARED BY OR FOR A NON–RESIDENT GIVE CONSTRUCTIVE NOTICE IF IT IS NOT ENDORSED AS REQUIRED BY § 35–4–110?

This issue is actually composed of two sub-issues: (1) Is Section 35–4–110 mandatory or directory?; and (2) Does Section 35–4–110 apply to out-of-state instruments?

Section 35–4–110 provides:

No probate judge shall receive for record or permit the recording of any instrument in which the title to real property, or any interest therein, or lien thereon, is conveyed, granted, encumbered, assigned or otherwise disposed of, or any instrument relating to the organization, reorganization or dissolution of a private corporation, unless such instrument has endorsed on it a printed, typewritten or stamped statement showing the name and address of the individual who prepared the instrument. If the instrument is in part composed of a printed form the person preparing the instrument shall be the person who filled in the blanks in the form or examined the entries made in such blanks by some other person.

Ala.Code § 35–4–110 (1975). There is no question that the instrument in issue lacked the required endorsement but was received and recorded by the probate court.

## Is Section 35–4–110 Mandatory or Directory?

Neither party has cited an Alabama case which addresses this issue and none could be found by this court. The court, therefore, must look to the statute itself.

■ "The fundamental rule of statutory construction is that a court is under a duty to ascertain and effectuate legislative intent as expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act and the purpose sought to be obtained." *Shelton v. Wright,* 439 So.2d 55, 57 (Ala.1983). In addition, the court may consider conditions which may arise under the provisions of the statute and examine the results which will flow from giving the language in question a particular meaning over another. *Studdard v. South Central Bell Telephone Co.,* 356 So.2d 139 (Ala.1978). Moreover, in determining legislative intent, the court may look to the history of the statute. *Bowlin Horn v. Citizens Hospital,* 425 So.2d 1065 (Ala.1983).

■ In the instant case, the determination of whether the statute is mandatory or directory centers on the phrase: "No probate judge *shall* receive for record or permit the recording of any instrument ..." (emphasis added). In *Mobile County Republican Executive Committee v. Mandeville,* 363 So.2d 754 (Ala.1978), the Alabama Supreme addressed this issue and stated:

The distinction between a mandatory provision and one which is only directory is that when the provision of a statute is the essence of the thing to be done, it is mandatory. Under these circumstances, where the provision relates to form and manner, or where compliance is a matter of convenience, it is the directory. *Rodgers v. Meredith,* 274 Ala. 179, 146 So.2d 308 (1962); *Board of Education of Jefferson County v. State,* 222 Ala. 70, 131 So. 239 (1930). In making this determination, it is legislative intent, rather than supposed words, art such as "shall," "may" or "must," which ultimately con-

trols. *Morgan v. State*, 280 Ala. 414, 194 So.2d 820, appeal dismissed, *cert. denied*, 389 U.S. 7, 88 S.Ct. 47, 19 L.Ed.2d 6 (1967). *See* also *Belcher Oil Co. v. Dade County*, 271 So.2d 118 (Fla.1972); *Barton v. Atkinson*, 228 Ga. 733, 187 S.E.2d 835 (1972); *Sho-me Power Co. v. City of Mountain Grove*, 467 S.W.2d 109 (Mo. App.1971).

363 So.2d at 757.

As the Bankruptcy Court noted, the Statute, in its amended form, was the product of the Alabama Law Institute (ALI). *See* Ala.Code § 29–8–1 *et seq.* (1975). In 1971, the ALI submitted a number of proposed bills to the Alabama Legislature in an effort to correct deficiencies in Alabama's real property laws. Three of the bills submitted and adopted by the legislature forbid the probate judge from accepting for record or recording an instrument which effects title or an interest in real estate unless the instrument contains certain information. Section 35–4–73 forbids a probate judge from recording an instrument unless it contains a recitation of the marital status of the grantor.[2] Section 35–4–74 forbids a probate judge from accepting for record an instrument which refers to an unrecorded plat or the plat is not attached to the instrument.[3] The third bill, Section 35–4–110 is at issue in this case.

2. Section 35–4–73 provides:

(a) No deed, contract or other conveyance of land or any interest therein, whether legal or equitable, shall be accepted for record by the probate judge unless it contains a recitation of the marital status of an individual grantor or vendor, provided, that the section shall apply only to instruments executed subsequent to July 21, 1972.

(b) A probate judge shall not be liable in damages or for a penalty for an error or mistake in the performance of his duties under the section if committed in good faith.

(c) Any person who knowingly makes a false recitation, as provided in subsection (a) of this section, shall be guilty of a misdemeanor.

3. Section 35–4–74 provides:

(a) No instrument, other than a will, purporting to create or transfer any interest in land shall be accepted for record by a probate judge if such instrument describes the land in

In its Commentary to the proposed amendment of section 35–4–110, the ALI stated: "In drafting the bill, the same problems were encountered as in the case of the proposed bill as to references to plats and the same solutions were resorted to." Alabama Law Institute, Report of the Institute Council on the Proposed Land Title Acts, Phrase III, page 42 (1971). These "same problems" were addressed by the ALI in its Commentary of Section 35–4–73, which states:

No title examiner needs to be reminded of the expense and inconvenience arising where a recorded instrument refers to an unrecorded plat. Such references should be forbidden. It is one thing to forbid and another to enforce the prohibition. The most drastic approach is to declare the instrument void ab initio. The Institute feels such a provision would cause more injustice than is justified by the benefits to be derived. An alternative is to forbid recording. The Institute is agreed this alternative should be adopted. If the bill forbids recording the question is raised, what is the effect of recording in violation of the bill? It is not deemed either fair or politically feasible to penalize the probate judge for accepting the instrument for recording. A second alternative is to deny the instrument the benefits of the notice statute. The original draft of this bill con-

which such interest is to be created or transferred by reference to a plat and the plat is not attached to and made a part of the instrument or the instrument does not describe the plat book and the office in which such plat book is to be found and there is no description of the land by metes and bounds; provided, that this section shall apply only to instruments executed subsequent to July 21, 1972, provided further, that where, prior to July 21, 1972, any person has received a conveyance of land, or any interest therein, in which the land is described by reference to a plat which is not recorded and which is not available to him, this section shall not apply if the grantor or mortgagor recites in any instrument executed after July 21, 1972, that the plat is lost, destroyed or unavailable for recording.

(b) A probate judge shall not be liable in damages or for a penalty for any error or mistake in the performance of his duties under this section if committed in good faith.

tained such a provision. After some discussion the Institute came to the conclusion that the confusion occasioned by having instruments on record which do not give notice would be undesirable. The use of criminal penalties were deemed impractical. The Institute can think of no practical way of enforcing by sanctions the proposed bill and therefore submit it in a form which is directory only. Probate judges are authorized to refuse recording to non-conforming instruments but no penalty results if they fail to do so. The Institute hopes that the influence of the bar will be sufficient to induce probate judges to enforce the act voluntarily. Until it is found that this hope is illusory the Institute submits the bill in its present form. Here, as in other cases, the Institute assumes it is a continuing body, capable of proposing amendments to bills which prove unworkable in practice.

It is clear from the above that the ALI directly addressed what the effect would be of recording in violation of the bill. The ALI specifically noted that such a violation would not affect notice, and that the proposed bills, as enacted, were submitted in a directory form. The court is not persuaded by Appellants that the Commentary cited above "does not take into account significant differences in the language in the three code sections." The ALI specifically cited the Commentary of Section 35–4–73 as speaking directly to Section 35–4–110.[4]

Accordingly, the court holds that Section 35–4–110 is directory only and, therefore, the instrument in question as recorded provided constructive notice.[5]

### Does Section 35–4–110 Apply to Out-Of-State Instruments?

■ There is an alternative reason for affirming the bankruptcy court's ruling. In its originally proposed form in 1965, Section 35–4–110 did not apply to any instrument executed or acknowledged outside of the state.[6] The Senate amended Section 4 and further narrowed its application, so that it did not apply to any instrument executed or acknowledged outside of the county or counties to which the Act applied.[7] Thus, as originally enacted, the section only applied to instruments executed or acknowledged in Jefferson County

4. Moreover, this court infers from the reading of the Commentary, that § 35–4–110 as originally proposed contained a provision to deny the instrument the benefits of the notice statute. This the ALI chose not to do. Moreover, in the Commentary to § 35–4–110, the ALI stated the purpose for the Act:

The proposed bill gives statewide application to a general act having special application to Jefferson and Mobile counties. Alabama Code Appendix, Sec. 622(1)–622(5). Some slight amendments have been made. It is reported to have worked well in those two counties. It is designed for two purposes. In the first place (and this brings the bill within the scope of the Project) it facilitates title proof by creating a record of at least one person, other than the party himself, who has knowledge of a transaction in a record of title. For example, if a deed fails to recite the marital status of the grantor and the grantor is unknown to the searcher, it may be extremely difficult to determine whether dower and homestead should have been released. On the other hand, the person preparing the instrument can generally readily be located and can furnish the needed information.

A second reason for such a bill is to assist the bar in suppressing unauthorized practice. ALI, Report, page 42.

5. In addition to the foregoing rationale, the court concludes that the Legislature would not impose such a harsh result upon a person (perhaps not only ignorant of the law but also uneducated) without a clear expression of such intent.

6. Section 4 of House Bill 1001 provided:

*Section 4.* Section 1 of this Act shall not apply to any will, decree, court order or judgment; to any instrument executed or acknowledged prior to the effective date hereof, nor to any instrument executed or acknowledged outside the state.

7. The Senate amendment stated:

*Section 4.* Section 1 of this Act shall not apply to any will, decree, court order or judgment, to any instrument executed or acknowledged prior to the effective date hereof; nor to any instrument executed or acknowledged outside of the county or counties to which the Act applies.

and submitted for record in Jefferson County.[8]

In 1969, the section was amended to change the population span of the classification to 300,000 from 600,000 inhabitants.[9] The effect of this change was to include Mobile County within the Act's coverage. Finally, in 1971, Section 35–4–110 was amended in order to give it statewide effect.

The parties have not presented to the court and the court could not find any legislative history which addresses the Act's effect on out-of-state instruments as the Act is presently codified. It is clear to the court that the legislature initially proposed that out-of-state instruments be deleted from the Act's coverage. This proposal was dropped for a narrower application of the Acts reach. It is arguable that Section 35–4–110 was never intended to apply to out-of-state instruments such as the one in issue.[10]

### CONCLUSION

Accordingly, the court finds that the decision of the Bankruptcy Court should be affirmed.

---

**8.** Section 1 of the Ala.Code § 35–4–110 as enacted in 1965, provided:

*Section 1.* That in all counties having a population of over 600,000 inhabitants according to the last or any succeeding federal census, no probate judge shall receive for record or permit the recording of any instrument in which the title to real property, or any interest therein, or lien thereon, is conveyed, granted, encumbered, assigned, or otherwise disposed of, or any instrument relating to the organization, reorganization action or dissolution of a private corporation, unless such an instrument has endorsed on it a printed, typewritten or stamped statement showing the name and address of the individual who prepared the instrument.

At the time of its enactment only Jefferson County had over 600,000 inhabitants.

**9.** Only Section 1 of Section 35–4–110 was amended. Section 4 of the Act was left intact.

**10.** Section 35–4–112 provides:

This division shall not apply to the recording of any will, decree, court order or judgment; nor to any instrument executed prior to July 21, 1972; except, that it shall apply to instruments executed since January 1, 1966, in counties having a population of over 600,000 inhabitants according to the 1960 or any succeeding federal census, and to all instruments executed since July 1, 1969, in counties having a population of 300,000 inhabitants according to the 1960 or a succeeding federal census. This section indicates a legislative intent to expand the Act's application in state from Jefferson County only to eventual state-wide application.