The exigency of these expedited appeals has prevented my having time to determine whether the majority opinion, which reaches the result that I believe must be reached in this case, reaches it for the reasons that I think it must be reached. Therefore, I concur in the result and write. I regret that the exigency of the moment also prevents me from putting my belief and reasoning into more impressive words.
The Constitution is subject to the same general rules of construction as are other laws; Alabama State Docks Dep't v.Alabama Public Service Comm'n, 288 Ala. 716, 724,265 So.2d 135, 143 (1972), "due regard being had to the broader objects and scope of the constitution as a charter of popular government." 16 Am.Jur.2d Constitutional Law § 91, at 417 (1979).
In John Deere Co. v. Gamble, 523 So.2d 95, 99-100 (Ala. 1988), this Court set out the following general rules of statutory construction:
 " 'The fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting the statute. Advertiser Co. v. Hobbie, 474 So.2d 93
(Ala. 1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). If possible, the intent of the Legislature should be gathered from the language of the statute itself. Advertiser Co. v. Hobbie, supra; *Page 863 Morgan County Board of Education v. Alabama Public School College Authority, 362 So.2d 850 (Ala. 1978). If the statute is ambiguous or uncertain, the court may consider conditions which might arise under the provisions of the statute and examine results that will flow from giving the language in question one particular meaning rather than another. Studdard v. South Central Bell Telephone Co., 856 So.2d 139 (Ala. 1978); League of Women Voters v. Renfro, supra.'
 "Clark v. Houston County Comm'n, 507 So.2d 902, 903-04 (Ala. 1987). In deciding between alternative meanings to be given to an ambiguous or uncertain statutory provision, we will not only consider the results that flow from assigning one meaning over another, but will also presume that the Legislature intended a rational result, see State v. Calumet Hecla Consol. Copper Co., 259 Ala. 225, 66 So.2d 726 (1953); Crowley v. Bass, 445 So.2d 902 (Ala. 1984) (dictum); 2A N. Singer, Sutherland Statutory Construction § 45.12 (Sands 4th ed. 1984), one that advances the legislative purpose in adopting the legislation, see Mobile County Republican Executive Committee v. Mandeville, 363 So.2d 754 (Ala. 1978), that is 'workable and fair,' State v. Calumet Hecla Consol. Copper Co., supra, Ex parte Hayes, 405 So.2d 366 (Ala. 1981), and that is consistent with related statutory provisions, see Tate v. Teague, 431 So.2d 1222 (Ala. 1983). . . ."
I cannot determine from the language of § 126 of the Constitution the intent of the framers of the Constitution in regard to the Governor's right to veto items in an appropriations bill after the final adjournment of the Legislature. Furthermore, reading the provision of § 125 of the Constitution, which deals with the Governor's power to approve a bill submitted to him during the last 5 legislative days within 10 days after the final adjournment of the Legislature, in conjunction with § 126, I cannot determine the intent of the framers of the Constitution in regard to the Governor's right to veto items in an appropriations bill after the final adjournment of the Legislature.
Because § 126 is ambiguous or uncertain in regard to the Governor's right to veto items in an appropriations bill after the final adjournment of the Legislature, I examined the official proceedings of the Constitutional Convention of 1901; and I could not ascertain the intent of the framers of the Constitution in this regard from these proceedings.
Therefore, in accordance with rules of constitutional construction, I "examine[d] results that will flow from giving the language in question one particular meaning rather than another." John Deere Co.
What is the nature of an executive veto?
The English King, as a constituent part of the supreme legislative power, once had the absolute prerogative of rejecting any measure passed by the two Houses of Parliament; the royal assent was an integral and indispensable part of the legislative process, which, in theory at least, could not be overcome by any further legislative action by the two Houses of Parliament other than that of reaching an accommodation with the King. I Blackstone, Commentaries on the Laws of England, ch. II, p. 177; ch. VII, p. 253 (1765). Although this practice had effectively been abandoned in England long before the close of the American colonial period, absolute executive vetoes were still exercised by some royal governors within the American colonies. See Commonwealth ex rel. Attorney General v. Barnett,199 Pa. 161, 48 A. 976 (1901). This use of the absolute executive veto created such discontent among the colonists that the absolute executive veto was listed first among the enumerated grievances in the Declaration of Independence: "He has refused his assent to laws the most wholesome and necessary for the public good."
With the grievances of the past in mind, the framers of all of the Alabama Constitutions have divided the powers of government into three distinct departments, with the legislative power being given to one, those that are executive to another, and those that are judicial to another, see § 42, Ala. Const. 1901, and they have prohibited each department of government from exercising *Page 864 
any of the powers of the other two departments, "except in the instances . . . expressly directed or permitted," see § 43, Ala. Const. 1901. Therefore, there is no "right" of executive veto except that expressly provided for in §§ 125 and 126, Constitution.
 "The authority of an executive to set aside an enactment of the legislative department is not an inherent power, and can be exercised only when sanctioned by a constitutional provision, and only in the manner and mode prescribed. . . . The veto power is in derogation of the general plan of the state government, and provisions authorizing it must be strictly construed, so as to limit its exercise to the powers expressly enumerated or necessarily implied."
82 C.J.S. Statutes § 52 (1953).
In regard to the use of the terms "liberal" and "strict" with respect to the construction of statutes, and, consequently, constitutions, 2A N. Singer, Sutherland Statutory Construction
§ 58.02 (Sands 4th ed. 1984), states:
 " 'Liberal' is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction."
I believe that the framers of the Alabama Constitution intended for the Governor's veto powers enumerated in §§ 125 and 126 of the Constitution to be narrowly or strictly construed so as not to thwart the lawmaking powers of the legislative department. See Ex parte Coker, 575 So.2d 43 (Ala. 1990) (Houston, J., concurring in the result).
Because I cannot determine that § 126 of the Constitution authorizes a post-adjournment item veto of an appropriations bill by the Governor, I must vote to affirm the judgment of the trial court.