Mettart et al. v. Allen.

---

No. 16,965.

METTART ET AL. v. ALLEN.

TITLE.—*Notice.— When One is Put on Inquiry.— Deeds Referred to.— Search.*—A person is regarded as notified of whatever appears on the instruments which constitute his chain of title, and whatever is sufficient to put him on inquiry is sufficient to charge him with whatever an ordinarily diligent search would have disclosed; and all deeds referred to as being in any way connected with the title, as well as those upon which the title is based, must be examined as to any facts they may contain, at the purchaser's peril.

SAME.—*Failure to Search Records.—Equitable Relief.*—Where it was a person's duty to search the records, which he did not do, he can not invoke the aid of a court of equity to relieve himself from the consequences of his own want of care.

SAME.—*Recitals in Mortgages, When Sufficient to Put Purchaser on In-*

Mettart *et al. v.* Allen.

*quiry.—Notice.—Incumbrances.—*That certain mortgages contain recitals of facts which made it a purchaser's duty to make an examination of the records to ascertain if there were any existing incumbrances upon the premises conveyed, see opinion.

DESCRIPTION.—*Real Estate.—*A description of real estate that may be rendered certain by averment is not void for uncertainty.

From the Wayne Circuit Court.

*J. Brown, L. A. Brown* and *L. E. Kepler,* for appellants.

*B. F. Mason* and *T. J. Study,* for appellee.

DAILEY, J.—This action was brought by the appellant, Mettart, against the appellee, Mary Allen, to quiet the title of said Mettart to certain real estate described in his complaint. The appellee filed a cross-complaint in the case, making the appellant George T. Kepler a party thereto, for the reason that he held a mortgage on said land, and in her cross-complaint set up a mortgage covering a part of the premises claimed by the appellant, executed to her deceased husband, John Allen, on the 10th day of January, 1885, to secure the payment of a note calling for the sum of four hundred dollars, which note and mortgage the executor of the will of said John Allen had assigned to the appellee, Mary Allen, and which mortgage she claimed was a first lien on the land.

The court made a special finding of facts, with conclusions of law, thereon, and found that appellee's said mortgage was the first lien on a part of the land, and rendered a decree foreclosing said mortgage and ordering the sale of that portion of the real estate covered thereby. The evidence is not in the record, and the facts must be presumed to have been correctly found by the trial court. The result, therefore, of the case in this court depends upon the correctness of the conclusions of law drawn upon the facts found by that court. From these findings it appears that the southwest quarter of

section 7, in township 17, range 13 east, in Wayne county, Indiana, contains only 114.24 acres, which quarter was purchased by William Brown, of the United States, February 27, 1836, and the certificate therefor was duly recorded in the recorder's office of said county; that on the 13th day of October, 1842, said Brown sold, and by deed conveyed, to Philander Fowler 35 acres off the north end of said quarter, which deed was duly recorded in the recorder's office of said county on October 24, 1842, leaving unconveyed and still owned by said Brown 79.24 acres of said quarter; that on the 14th day of February, 1850, the 35 acres were conveyed by John M. Knight, commissioner, to James Walker, the deed therefor being duly recorded in said recorder's office on December 18, 1850; that on the 16th day of August, 1847, said William Brown sold, and by deed conveyed, said quarter section to James Brown, except said 35 acres, which, said deed recited, had been previously sold to James Walker, and the deed from William to James Brown was duly recorded in the recorder's office on the date of its execution; that said James Brown, on the 10th day of November, 1853, sold and conveyed to James Walker 39.62 acres off the north side of said 79.24 acres, which he purchased of William Brown, and which was described in the deed as the north half of the residue of said quarter. On the 6th day of October, 1854, said Walker sold and by deed conveyed to Elisha Brown 39.62 acres off the south side of said quarter, the premises being described as "the south half of the residue of said quarter," and this deed was duly recorded in said recorder's office January 18, 1855, and upon the execution of said deed to said Elisha Brown he took possession of the tract therein described and held the same until October 1, 1881, when he sold and conveyed it by deed to Catharine Morrical by the description of the *south*

*half of the residue of said quarter*, which deed was duly recorded in said recorder's office on March 4, 1882, and upon the execution thereof the grantee took possession of the premises and kept and held the same until the 4th day of December, 1882; that on said day the grantees sold and by deed conveyed said tract to Sarah Fouts by the description of the *south half of the residue of said quarter*, which deed was duly recorded in said recorder's office on the 16th day of January, 1885, and upon the execution thereof to said Fouts she took possession of said tract and held the same until the 19th day of January, 1885, except 20 acres off the west end thereof, which she sold to the appellant Mettart, and Samuel and David Fouts; that on the 19th day of January, 1885, said Sarah Fouts sold and conveyed said tract of 39.62 acres, except 20 acres off the west end thereof, to Martin Worl, by the description of the *south half of the residue of said quarter*, which deed was duly recorded in said recorder's office on the 10th day of November, 1885, and upon the execution of said deed to him he took possession and kept the same until the 25th day of January, 1887; that on the 10th day of January, 1885, and while said Worl owned and was in possessson of said 39.62 acre tract, except said 20 acres off the west end thereof, he executed the mortgage thereon to said John Allen, now held by the appellee, Mary Allen, to secure the payment of said note of $400 which she also holds; that said mortgage was duly recorded in the recorder's office of said county on the 26th day of January, 1885, and in which said land was described as being the *south half of the residue of said quarter*, except 20 acres off the west end thereof; that on the 25th day of January, 1887, said Worl sold and conveyed said 39.62 acres, except said 20 acres off the west end thereof, to Susannah Baker, which were described as being 33 acres off the east end of the south half of said

quarter, and as being the same land heretofore conveyed by Catharine Morrical to Sarah Fouts, and by her conveyed to Martin Worl, January 19, 1885; that the deed to said Baker was duly recorded in the recorder's office of said county on January 27, 1887, and she took possession of said real estate at the time of the execution of the deed, and held the same until January 25, 1887, when she sold and conveyed the same to Jacob L. Baker, by the same description by which it was conveyed to her, which land said grantee held until January 27, 1887, when he sold and transferred it by deed, by the same description, to appellant Mettart; that when said Sarah Fouts conveyed said 20 acres off the west end of said 39.62 acres off the south side of said quarter to the appellant Mettart and Samuel and David Fouts, on February 7, 1884, it was described in the deed to them as 20 acres off the west end of the *south half of the residue of said quarter,* which deed was duly recorded in said recorder's office on February 7, 1884, and upon the execution of said deed the grantees took possession of said 20 acres. And, on the 16th day of July, 1888, the appellant Mettart sold and conveyed his interest therein to Samuel and David Fouts by the same description; that on the 10th day of November, 1853, said James Brown sold and conveyed to said James Walker the *north half* of said 79.24 acres by the description of the *north half of the residue of said quarter,* which deed was duly recorded in said recorder's office on the 22d day of February, 1854.

The court finds that the said 39.62 acres off the south side of said quarter, from October 6, 1854, to January 19, 1885, inclusive, was known and designated and described in all the deeds of conveyance thereof, being six in number, as the *south half of the residue of said quarter,* all of which were duly recorded in the recorder's office of

said county, and that when the appellant Mettart purchased the land described in his complaint from Jacob L. Baker, on January 27, 1887, he knew the same had been previously possessed and owned by Elisha Brown, Catharine Morrical, Sarah Fouts, Martin Worl, Susannah Baker and Jacob L. Baker, and that it was *embraced in and constituted a part of what was known as the south half of the residue of said quarter,* and that said 39.62 acres off the south side of said quarter constituted what was known as *the south half of the residue of said quarter.*

The finding of the court thus shows that when appellant Mettart purchased the land described in the complaint, he not only knew the tract known as the *south half of the residue of said quarter,* but knew the land he was buying was *embraced within and constituted a part of that tract,* and knew the various persons who had previously owned the same, one of whom was Worl, and had himself but recently bought, occupied, and conveyed away a portion thereof, by the description of the *south half of the residue of said quarter.*

It will be seen, from the finding of facts, that in all the deeds for this 39.62 acres, including the one to Elisha Brown, and from him down to and including the one to Martin Worl, this tract is described as the *south half of the residue of said quarter,* and that in the deeds from said Worl to said Susannah Baker, and from her to Jacob L. Baker, and from him to appellant, the land is differently described, to wit, as the 33 acres off the east end or side of the south half of said quarter, but in the deed of said Worl to Susannah Baker, which constitutes a part of appellants' chain of title, it is also described or referred to as being the *same land* previously conveyed by Catharine Morrical to Sarah Fouts, and by the latter to Martin Worl, by deed of January 19, 1885.

The appellant Mettart is chargeable with the recitals

in said deed of Martin Worl, an examination of which would have disclosed to him that this land had been previously owned by said Worl, Catharine Morrical and Sarah Fouts, and that it was described differently in their deeds therefor, from the description in the deeds from Worl to Susannah Baker, and the one from the latter to Jacob L. Baker, appellants' grantor, and was known as the *south half of the residue of said quarter section* in said conveyances.

In addition to this, the court finds that Mettart had actual knowledge of all these facts, aside from that with which he is chargeable from the recital in Worl's deed.

It is also clear that if Mettart had examined the records of these conveyances, he would have seen that while. Worl owned this land he executed the mortgage thereon now held by the appellee, by the same description by which it had been conveyed to him, and by which it had been known, conveyed and transferred since 1854, being the same designation by which he knew said 39.62 acre tract had been known, and which the court found embraced the portion he bought of Jacob L. Baker. But the court found that said Mettart made no examination of the mortgage records of said county to ascertain if Worl had executed any mortgage thereon, and that he had constructive notice thereof when he purchased the land described in the complaint.

The law is well settled that a man is regarded as notified of whatever appears on the instruments which constitute his chain of title, and whatever is sufficient to put him on inquiry is sufficient to charge him with whatever an ordinarily diligent search would have disclosed. And that all deeds referred to as being in any way connected with the title, as well as those upon which the title is based, must be examined as to any facts they

may contain, at the purchaser's peril. Martindale Conv., sections 74 and 277.

It having been the duty of the appellant Mettart to search the records, which he did not do, he can not invoke the aid of a court of equity to relieve himself from the consequences of his own want of ordinary care, and the same reasoning applies to the mortgages held by the appellant Kepler.

The court found that on the 25th day of January, 1887, said Susannah Baker, while the owner of the land, executed a mortgage to said Worl thereon, to secure the payment of four promissory notes calling for $450, payable in one, two, three, and four years, the land being described as 33 acres off the east side of the south half of said quarter, which notes and mortgage Worl assigned to said Kepler; that on the 29th day of August, 1887, said Jacob L. Baker executed a mortgage on said land to said Kepler, to secure the payment of a note for $100, and in the mortgage the land was described as above, with the further description, "and being the same land conveyed by Catharine Morrical to Sarah Fouts, and by her to Martin Worl, and by the latter to Susannah Baker, and by the latter to Jacob L. Baker.

And that, on the 15th day of September, 1888, said Jacob L. Baker executed another mortgage on said land to said Kepler, to secure the payment of a note for $600, in which said land was described as in said other mortgage executed by said Jacob to said Kepler, and said note has been paid, except the sum of $50. It thus seems that the recitals in the mortgages apprised him of facts which made it his duty to make an examination of the records to ascertain if there were any existing incumbrances upon the premises so conveyed.

The court found that when the mortgage of Susannah Baker to Worl was executed to secure the notes amount-

ing to $450, which said Worl assigned to Kepler, and when she bought the land of Kepler she knew of the existence of the mortgage, now held by the appellee, and that Kepler made no examination of the mortgage records, to ascertain if there were any prior mortgages on the land. The court does not find that the notes assigned to and held by Kepler were payable in any existing bank of this State, so as to give them the sanctity of commercial paper, and hence he holds them subject to the same defenses that they would be exposed to in the hands of any previous holder.

We do not think the Allen mortgage is absolutely void, by reason of the description, as asserted by the learned counsel for the appellee. A description of real estate that may be rendered certain by averment is not void for uncertainty. *Pence* v. *Armstrong,* 95 Ind. 191.

It has been held that the description of a tract of land by the name which it has acquired by reputation is sufficient. *Huddleson* v. *Reynold's Lessee,* 8 Gill & Miller (Md.), 332; 50 Am. Dec. 702.

So a tract of land that has a well known name may be described by that name. *Haley* v. *Amestoy,* 44 Cal. 132; *Stanley* v. *Green,* 12 Cal. 148.

It is also a doctrine of the courts that possession may render certain what would otherwise be an uncertain description. *Richards* v. *Snider,* 11 Ore. 197.

In our opinion the description of the real estate in question is susceptible of being made certain by averment, as has been done in this case, and as the appellants had constructive notice of appellee's mortgage, the court did not err in holding her cross-complaint sufficient, or in its conclusions of law. Wade Notice, sections 183, 184 and 185.

The judgment of the court below is affirmed.

Filed Dec. 13, 1894.