**In re Maurice Glenn HERR and Audrey Jean Herr, Debtor(s).**

**Bankruptcy No. 85–40108.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Oct. 22, 1987.

Jack O'Bryan, Lafayette, Ind., for debtor.

Mary Holste, Indianapolis, Ind., for American Fletcher Serv.

---

MEMORANDUM OPINION & ORDER [1]

KENT LINDQUIST, Chief Judge.

On April 23, 1985 the Debtors filed their Application to Determine Status of Claims in this Chapter 7 case.

The Debtors asserted that on December 14, 1984, the Debtors granted American Fletcher Financial Services, Inc. (hereinafter: "American") a mortgage on certain real estate to secure a certain indebtedness by the Debtors to American upon which there is presently due $6,439.36.

The Debtors further asserted that the value of said real estate is $100.00 and therefore, the Debtors pray that American's claim be deemed secured to the extent of $100.00 and unsecured in the amount of $6,339.36 pursuant to § 506.

On May 3, 1985, American filed its response to the Debtors' Motion and asserted that there was a "scrivener's error" in said mortgage, as evidenced by the legal description in a certain mortgage given by the Debtors to American on February 8, 1984, which mortgage was "renewed" by the December 14, 1984, mortgage.

American further responded that the intention of the parties was that the legal description as set out in the February 8, 1984 mortgage was to be included in the December 14, 1984 mortgage, which is further evidenced by the Federal Truth In Lending Disclosure Statements signed by the Debtors on February 8, 1984, and December 14, 1984 which stated that the note was secured by a mortgage on the Debtors' residence, and that the mortgage should be reformed to correct the scrivener's error to show the true intention of the parties, or in the alternative that the court find that the value of the real estate described in the December 14, 1984 mortgage is in excess of $100.00.

A hearing was held on July 18, 1985, and the Debtors were granted 30 days to file a petition to void American's lien pursuant to § 522(h) supported by a brief.

On December 14, 1984, the Debtors filed their Motion to Avoid a Transfer upon Refusal of the Chapter 7 Trustee to Act pursuant to § 522(h). That Motion reasserts the same facts as set out in the Motion to Determine Secured Status filed by the Debtors as to the December 14, 1984, mortgage and alleges that the trustee had declined to assert his voiding powers as a hypothetical lien creditor of real estate pursuant to § 544(a)(3), and that inasmuch as American is seeking to have the mortgage reformed to include real estate other than that listed in the mortgage, the trustee could have voided such a mortgage pursuant to 11 U.S.C. § 544(a)(3). The Debtors further allege the Debtors may void the transfer (mortgage) of the property of the Debtors to American to the extent that the Debtor could have exempted such property under § 522(g)(1) if the trustee had voided such transfer if the transfer is voidable under § 544, and the trustee does not attempt to void such transfer. The Trustee has declined to exercise his voiding powers in this case.

The Debtors filed their brief in support of said motion on August 22, 1985. American filed its memorandum in opposition thereto on September 19, 1985, and the Debtors filed their answer thereto on October 3, 1985.

On April 28, 1986, the Court issued its Memorandum Opinion and Order whereby it made the following findings of fact:

On February 8, 1984, the Debtors and AF entered into a note and mortgage. The mortgage executed by the Debtors on that date covered the Debtors' residence on lot 11 and a portion of lot 10 in Kimberly Estates. The mortgage was recorded on February 10, 1984 as is evidenced by the recording stamp. The mortgage itself states: "[A]nd also to secure the payment of any renewal or renewals of the said indebtedness or extensions of its time or times of payment." Also executed on February 8, 1984 was a Federal Truth and Lending Disclosure Statement. It also reflects that the Debtors gave AF a security in-

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankr.Rule 9014 and 7052.

terest in their primary residence. Presumably a mortgage note was executed on the same date. However, copies of that mortgage note have not been made available to the Court.

On December 14, 1984 a new loan agreement was executed by the Debtors and AF. It is unclear to the Court why the new transaction occurred.

However, on that date, December 14, 1984, a new mortgage note was executed, a Truth & Lending Disclosure Statement was executed, and a new mortgage was executed by the Debtors. The mortgage was recorded on December 17, 1984. The mortgage note signed by AF and the Debtors clearly indicates that the note is secured by the mortgage executed on December 14, 1984.

Further, the mortgage executed on December 14, 1984, contained a defective legal description, in that, only the portion of lot 10 was shown. Correctly, the mortgage should have shown all of lot 11 and the portion of lot 10. No evidence was presented to the Court as to the cause of the error.

The Debtors filed bankruptcy on March 8, 1985. It was a Chapter 7 bankruptcy. At the time of filing, no correction had been made to the incorrect legal description contained in the December 14, 1984 mortgage.

*In re Herr,* unpublished opinion, United States Bankruptcy Court, Northern District of Indiana, Hammond Division, Case No. 85–40148, April 28, 1986, pp. 1–2.

The Court will not burden this opinion by a repetition of its conclusions of law in the April 28, 1986 order. In summary, the Court concluded that Indiana law would apply as to whether the Debtors in their limited status of bona fide purchaser under § 544(a)(3) could prevail over American, that Indiana Courts are in accord with the general rule that the execution and filing of a second mortgage does not extinguish the lien of the first mortgagee, but that the Courts may look to the intentions of the parties. *Walters v. Walters,* 73 Ind. 425 (1881).

The Court concluded that further evidence based on the relevant documents was necessary to determine if there was any intention by the parties to extinguish the first mortgage by the execution of the second mortgage, and if not, whether the first mortgage correctly described the real estate, was properly recorded, and put the Debtor with the status of a hypothetical bona fide purchaser pursuant to § 544(a)(3) on constructive notice. The Debtor was given 30 days to submit any evidence relevant to the issue.

On May 13, 1986, the April 28, 1986 order was modified on the time and order of the submission of additional evidence pursuant to agreement of the parties filed May 7, 1986.

On August 15, 1986, the parties jointly filed the following documents:

1. Corporate Warranty Deed—Lot 11

2. Corporate Warranty Deed—Part of Lot 10

3. Real Estate Mortgage—February 8, 1984

4. Account Ledger Card—Note of February 8, 1984 (Original Note has been lost)

5. Truth in Lending Disclosure Statement—February 8, 1984

6. Lender's Search Dated as of December 4, 1984

7. Real Estate Mortgage—December 14, 1984

8. Mortgage Note—December 14, 1984

9. Truth in Lending Disclosure Statement—December 14, 1984

10. Itemization of Amount Financed—December 14, 1984

11. Certified Satisfaction of Mortgage—December 21, 1984

12. Record Data Search of Lot 11—June 27, 1986

Document 11 is a satisfaction of the first mortgage dated February 8, 1984, executed December 21, 1984, by American and which was filed by American with the Tippecanoe County recorder on December 27, 1984. That document is a certification by American that said mortgage "has been fully

paid and satisfied, and the same is hereby released." This first mortgage was as to a portion of Lot 10 and Lot 11.

Thus, it is clear that the intention of American was *not* to keep the first mortgage in place when the second mortgage was executed but to rely exclusively on the second mortgage.

American in its supplemental memorandum filed September 10, 1986, argues that Document 12, which is a title search done by record data as to Lot 11 performed on or about June 27, 1986, or after the Debtors commenced this case and achieved the status of a hypothetical bona fide purchaser, reflects the recording of the December 14, 1984 mortgage and, that the Debtors, with the status of hypothetical bona fide purchaser could have by reasonable inquiry, after being put on constructive notice by said mortgage, determined the full extent of American's lien interest in the real estate, *citing, Hoffman v. Foreman*, 163 Ind.App. 263, 323 N.E.2d 651, 657 (1975) for the proposition that Indiana law imposes a duty of inquiry upon prospective purchasers and a purchaser may be bound by facts that would have been discovered by reasonable inquiry.

■ It is clear that as of the date of the Debtors' petition commencing this case on March 8, 1985, only one pre-petition mortgage by the pre-petition Debtors (as a separate entity from the post-petition Debtors with the post-petition status of a bona fide purchaser) to American was legally in existence and duly recorded, and that was the second mortgage given by the Debtors to American dated December 14, 1984, and recorded December 17, 1984, by which the Debtors granted to American a mortgage on part of Lot 10 only. A search of the records by a bona fide purchaser on March 8, 1985, would fail to reveal the existence of any duly recorded mortgage by the Debtors to American which had not been released and satisfied by American as to Lot 11. The fact that the first mortgage had been duly executed and recorded could, of course, be reasonably determined by the reference thereto in the satisfaction of mortgage filed on December 27, 1984.

However, a bona fide purchaser had every right to rely on the public records as to the condition of Lot 11 as of March 8, 1985, and a search of the February 8, 1984 mortgage as satisfied as to Lot 11 on December 27, 1984, would clearly reveal that no duly recorded mortgage by the Debtors to American was in existence as to Lot 11 on the date of the hypothetical purchase on March 8, 1985. It would not be reasonable to expect a bona fide purchaser to make any further inquiries given the clear and unambiguous nature of the satisfaction of mortgage prepared by American's own representative. Of course, the fact that the Debtors had actual knowledge of any possible intent to also secure Lot 11 by the December 14, 1984 mortgage is wholly irrelevant for the purposes of this proceeding.

As recently decided in the case of *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir.1986), the Seventh Circuit held that *actual* knowledge by the pre-petition debtor of an encumbrance is irrelevant when Bankruptcy Code § 544(a) is invoked by a trustee or debtor-in-possession (or when, as in the instant case, the Debtors are acting in lieu of the Trustee). The Court reasoned as follows:

> Section 544(a) states that a trustee "shall" be able to avoid an encumbrance that would be voidable by a bona fide purchaser "without regard to any knowledge of the trustee or of any creditor." The natural interpretation of this language is that actual knowledge of the encumbrance will never prohibit a trustee from invoking § 544(a)(3).

The Third Circuit's analysis of the legislative history of § 544(a) in *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982), supports the view that Congress meant what it said. In *McCannon*, the issue before the court was whether the "actual knowledge" clause in § 544(a) gave a trustee the powers of a bona fide purchaser, regardless of the trustee's actual knowledge and regardless of any constructive notice that otherwise would be imputed to a subsequent purchaser. The *McCannon* court noted that the legisla-

tive history of § 544(a) itself was sparse, and therefore turned its attention to a 1973 draft bankruptcy code that contained a similar provision. The language of this provision was very close to the language eventually adopted by Congress as § 544(a). The Commission on Bankruptcy Laws of the United States explained that this 1973 draft language was "designed to make clear that the trustee's status under the subdivision is purely hypothetical and unaffected by any knowledge which he, personally, or any or all creditors may have." Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 93–137, Part II, 93rd Cong., 1st Sess. 161, n. 3; *see McCannon,* 679 F.2d at 16. The *McCannon* court concluded that under § 544(a), actual knowledge was irrelevant regardless of the state law of actual notice. *See McCannon* at 16–17. This evidence of intent, although not conclusive, supports the inference that Congress intended actual knowledge of a transfer of property or encumbrance on property to be irrelevant, regardless of state law.

Despite the plain language of the statute and some evidence of congressional intent, however, Halliburton argues that this court should follow [*In re*] *Hartman Paving* [*Inc.,* 745 F.2d 307 (4th Cir.1984)] and look to state law and policy to decide when a trustee or debtor-in-possession with actual knowledge of a transaction may invoke § 544(a). This approach is faulty for several reasons.

First, the *Hartman Paving* approach ignores a distinction Congress makes between § 544(a) and § 544(a)(3). The phrase "bona fide purchaser" in § 544(a)(3) is qualified by the words "against whom applicable law permits such transfer to be perfected." This language has been interpreted to mean that the state law of constructive notice remains applicable in the context of § 544(a)(3). *See McCannon,* 679 F.2d at 17. But the "without regard to any knowledge" clause in § 544(a) is not qualified in any way. In the absence of any reason to believe that this lack of

qualification is a drafting error, we must assume that this distinction makes a difference and that state law is not relevant to § 544(a). *See Id.*

Second, the *Hartman Paving* approach conflicts with our duty to give meaning to all the language of a statute. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *Scott v. Anderson Newspapers, Inc.,* 477 N.E.2d 553, 563 (Ind.App.1985). It is hornbook law that property law does not generally protect a bona fide purchaser with actual knowledge of a transfer of or encumbrance on property. *See, e.g.,* 8 G. Thompson, *Commentaries on the Modern Law of Real Property* § 4325 at 431–42, 434 (J. Grimes repl. ed. 1963) (as a general rule, a purchaser is bound by knowledge of previous conveyances, whether of record or not; mortgagee with actual knowledge takes subject thereto and is not protected as a bona fide purchaser). Hence, if we adopted Halliburton's suggested approach, the "actual knowledge" clause of § 544(a) would be a dead letter for all practical purposes.

Finally, as the district court in this case noted, the *Hartman Paving* analysis creates a distinction in the Bankruptcy Code between a trustee (who will rarely have actual knowledge) and a debtor-in-possession (who will often have actual knowledge). This result is in conflict with section 1107(a), which gives the debtor-in-possession 11 the rights and duties of a trustee. 11 U.S.C. § 1107(a). *See* S.Rep. No. 95–989, 95th Cong.2d Sess. 117, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5903. ("This section places a debtor-in-possession in the shoes of a trustee in every way."); *accord,* H.Rep. No. 95–595, 95th Cong.2d Sess. 404, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6360.

We conclude that Congress did not intend Sandy Ridge's knowledge of the mortgage to prevent it from asserting the strong arm clause, because actual knowledge is irrelevant under § 544(a). *See McCannon v. Marston,* 679 F.2d at

**798**

16–17; *See also, In re Bygaph, Inc.*, 56 B.R. 596, 603 (Bankr.S.D.N.Y.1986); *In re Ernest & Assoc., Inc.*, 59 B.R. 495, 497–98 (Bankr.W.D.Tex.1985); *In re Matos*, 50 B.R. 742, 744–45 (Bankr.N.D.Ala. 1985); *In re Hartman Paving*, 745 F.2d at 311 (Winter, C.J., dissenting). We therefore decline to adopt the Fourth Circuit's rule in *Hartman Paving* as the law in the Seventh Circuit.

807 F.2d at 1335–1336.

Thus, for example, the pre-petition Debtor's actual knowledge of a mortgage which was filed without the requisite endorsement of the preparer which the Debtor had as a party to the transaction is not imputable to it as a Debtor-in-possession who has the status of the *ideal* bona fide purchaser. *In re Matos*, 50 B.R. 742 (D.C.Ala.1985); *Contra, In re Hartman Paving, Inc.*, 745 F.2d 307 (see well reasoned dissent which concludes that the debtor-in-possession should not be charged with the debtor's actual notice because the debtor-in-possession is avoiding the unperfected interest only in its role as trustee for all claimants against the debtor).

We must now turn to Indiana law regarding bona fide purchasers and the Indiana Recording Statutes. Indiana law provides:

> Every conveyance or mortgage of lands or of any interest therein, and every lease for more than three (3) years shall be recorded in the recorder's office of the county where such lands shall be situated; and every conveyance, mortgage or lease shall take priority according to the time of the filing thereof, and such conveyance, mortgage or lease shall be fraudulent and void as against any subsequent purchaser, lessee or mortgagee in good faith and for a valuable consideration, having his deed, mortgage or lease first recorded.

I.C. § 32–1–2–16.

The purpose of this recording statute is to give subsequent purchasers constructive notice of prior conveyances. As was stated in *Wienke v. Lynch*, 407 N.E.2d 280, 286 (Ind.App.1980):

Constructive notice is a legal inference from established facts. Deeds and mortgages, when properly acknowledged and placed on record as required by statute, are constructive notice of their existence, and charge a subsequent grantee with notice of all that is shown by the record. (Citation omitted). *Willard v. Bringolf,* (1936) 103 Ind.App. 16, 29, 5 N.E.2d 315, 321.

A bona fide purchaser in Indiana is one who purchases in good faith, for valuable consideration and absence of notice of outstanding rights of other persons. 25 Indiana Law Encyclopedia, *Sales of Realty*, § 102, p. 341; *See also, Willard v. Bringolf,* 103 Ind.App. 319, 2 N.E.2d 994 (1936). By virtue of § 544(a) a Debtor-in-Possession or Trustee or one acting on their behalf as the Debtors here cannot be held to have *actual* notice. *See In Sandy Ridge Oil Co., Inc.*, 807 F.2d 1335–36, *supra.*

Thus, to determine whether the Debtors may void said mortgage it must also be shown that they also did not have constructive notice of the mortgage. The phrase "bona fide purchaser" in § 544(a)(3) is qualified by the words "against whom applicable law permits such transfer to be perfected." This means that as opposed to the issue of *actual* notice wherein the Trustee (here the Debtors) is presumed *not* to have *actual* notice pursuant to § 544(a), the issue of whether or not the Trustee has *constructive* notice pursuant to § 544(a)(3) will be determined by applicable state law or in this case the law of the State of Indiana. *See In Sandy Ridge Oil Co., Inc.*, 807 F.2d 1335–36, *supra.* The next question thus becomes whether the Trustee with the status of a bona fide purchaser pursuant to Indiana law by having constructive notice of the first mortgage as to Lot 11 dated February 8, 1984, and also having constructive mortgage of its full satisfaction recorded on December 27, 1984, whether it is reasonable to require that a bona fide purchaser had a further duty to make additional inquiry as to whether the Debtors had possibly intended to encumber both Lot 11 and a portion of Lot 10, by virtue of the subsequent mortgage dated December 14, 1984, even

though that mortgage is clear and unambiguous, in that it encumbers only a portion of Lot 10.

■ Generally, acceptance of second note and mortgage in *renewal* of a prior note and mortgage does not extinguish lien of prior mortgage unless the parties so intend. *See Marialke v. Conservative Life Ins. Co. of America*, 105 Ind.App. 554, 12 N.E.2d 983 (1938); *Byrum v. Wise*, 216 Ind. 678, 24 N.E.2d 1006 (1940), *reh'g denied*, 216 Ind. 678, 25 N.E.2d 992; *Farmers First Nat. Bank of New Castle v. Citizens State Bank of New Castle*, 211 Ind. 389, 5 N.E.2d 506 (1937); *Ponder v. Ritzinger*, 102 Ind. 571, 1 N.E. 44 (1885); *Cissna v. Harnes*, 18 Ind. 496 (1862). However, care must be taken to distinguish the fact situation where a second renewal mortgage is taken and the first mortgage is not released or satisfied of record and where the first mortgage is released or satisfied.

As to the satisfaction of mortgages there are two separate Indiana statutes relevant to the recording thereof, I.C. 32–8–11–6 and 32–8–15–1.

Indiana Code 32–8–11–6 provides as follows:

Sec. 6. Where a mortgage has been paid and satisfied by the mortgagor, the mortgagor may take a certificate of satisfaction, duly acknowledged by the mortgagee, or his lawful agent, as required for the acknowledgment of conveyances to entitle them to be recorded; which certificate and acknowledgment shall be recorded by the recorder in whose office that mortgage is recorded, with a reference to the book and page containing the record of the mortgage, and that *recorded certificate shall forever discharge and release the mortgagor from that mortgage* (or portion of that mortgage as indicated in a partial satisfaction, *and forever bar all suits and actions thereon.* (Emphasis added). (This provision was amended after the date of the satisfaction was recorded but did not change the relevant substantive provisions).

Indiana Code 32–8–15–1 specifically refers to releases by financial institutions or corporations. The relevant portion thereof is as follows:

Sec. 1 (a) It shall be lawful for the president, vice president, cashier, secretary, treasurer, or attorney in fact of any national bank, state bank, trust company, or savings bank, or the president, vice president, general manager, secretary, treasurer, or attorney in fact of any other corporation, doing business in the state of Indiana, to release upon the record mortgages, judgments, and other record liens, upon the payment of the debts secured by such liens.

(b) Such a release, when made upon the margin or face of the record of such mortgage, judgment, or other lien, and attested by the recorder, clerk, or other officer having custody of the record of such lien, *shall operate as full discharge and satisfaction of such lien.*

\*   \*   \*   \*   \*   \*

(d) Such a national bank, state bank, trust company, or savings bank, or other corporation may, in like manner, release and discharge mortgages, judgments, and other record liens each by a separate written instrument signed by its corporate name, by its president, vice president, cashier, secretary, treasurer, or attorney in fact of such national bank, state bank, trust company, or savings bank, or the president, vice president, general manager, secretary, treasurer, or attorney in fact of such other corporation, which release shall be recorded by the recorder, clerk, or other officer having custody of the record of such lien, with a reference on the margin of the record of such lien to the place where said release is recorded, and *such release, when so recorded, shall operate as a full discharge and satisfaction of said lien, or portion of said lien as indicated in a partial release.* (Emphasis added).

The crucial distinction in this case is that American did not merely *renew* the first note and mortgage with a second note and mortgage leaving the first note and mortgage of record as unpaid and unsatisfied, which would be constructive notice of a

viable lien interest to all the world, including the Debtor with the status of a hypothetical bona fide purchaser, but did in fact *fully satisfy* the first mortgage of record as to Lots 11 and a portion of Lot 10. A hypothetical bona fide purchaser was entitled to rely on what a search of the relevant mortgage records revealed. Prima facie an entry of release or satisfaction on the record releases and discharges the mortgage. *Smith v. Lowry,* 113 Ind. 37, 15 N.E. 37 (1888); *Farmer's Bank v. Butterfield,* 100 Ind. 229 (1884). And a release or satisfaction is generally binding with respect to the rights of third persons dealing with the property without notice other than the record affords. *Greathouse v. Harrison,* 65 Ind.App. 95, 114 N.E. 92 (1916). It has been held that when the agent of a corporation who negotiated a loan of its money, acted in reliance upon a *release* of record of a prior mortgage without knowledge that it had not been paid was a sufficient finding that the corporation for which he acted had no notice. *Conn. Mut. Life Ins. Co. v. Talbot,* 113 Ind. 373, 14 N.E. 586 (1887). However, as between the parties, or as to subsequent encumbrancers or purchasers *with notice,* it is open to contradiction, or it may be deprived of its effect by proof of fraud, accident or mistake.

■ As noted in *Sandy Ridge, supra,* the debtor as the hypothetical bona fide purchaser is not charged with any actual knowledge that the pre-petition debtor may have had as to a possible mistake in the description in the second mortgage and thus the Debtors' rights in lieu of the trustee as a bona fide purchaser as to Lot 10 will be superior to those of American. A purchaser of land is bound by facts which an ordinarily diligent examination of the records and of the recitals of instruments recorded affecting land conveyed would disclose. *Mettart v. Allen,* 139 Ind. 644, 39 N.E. 239 (1894). Here, the language and recitals in the satisfaction of the first mortgage and the legal description in the second mortgage are clear and unequivocal. A bona fide purchaser would not reasonably have to make a further inquiry based on the public records.

Accordingly, the Court finds that the Debtors take title free and clear of all liens of American as to Lot 11 to the extent it impairs their exemption.

■ The description in the second mortgage is not a mere scrivener's error, and although a mutual mistake between American and the pre-petition Debtors may have occurred so that the legal description in the second mortgage may have been subject to reformation between the immediate parties, American lost that right when the bankruptcy intervened and the trustee, as the hypothetical bona fide purchaser, came into existence. The legal description as to Lot 10 as far as it went was correct, and Lot 11 is not described in any way in the second mortgage in any way so as to compel a bona fide purchaser to make any further inquiry. A mistake in a written instrument will not be corrected against a bona fide purchaser for value without notice. *Pence v. Armstrong,* 95 Ind. 191 (1883); *Vitito v. Hamilton,* 86 Ind. 137 (1882); *Hewitt v. Powers,* 84 Ind. 245 (1882). It has also been expressly held that an erroneous description in a mortgage which is complete in itself, and clearly and correctly identifies another body of land will not be reformed to embrace an entirely different tract to the prejudice of a subsequent mortgagee who accepted the mortgage in ignorance of the mistake and a bona fide reliance on the appearance of the public record. *Rinehardt v. Reifers,* 158 Ind. 675, 64 N.E. 459 (1902). Thus, American is precluded from reforming the second mortgage as to Lot 11 to the extent such reformation would impair the Debtors' exemption as to Lot 11. American may proceed in the state court, if it so elects, in an attempt to reform the second mortgage as to Lot 11 based on material mistake to the extent that any such reformation decree would not impair the Debtors' exemption and the stay is so vacated for that purpose.

SO ORDERED.