In re Nancy Kathryn WHITLOW,
d/b/a Whitlow's Brentwood
House, Debtor.

CENTRAL BANK, Plaintiff,

v.

James L. McGREGOR, Beryl McGregor,
Nancy K. Whitlow, and United States of
America by the Internal Revenue Service, Defendants.

Bankruptcy No. 89–60938–S–11.
Adv. No. 90–6030.

United States Bankruptcy Court,
W.D. Missouri.

July 17, 1990.

Carson W. Elliff, Springfield, Mo., for plaintiff, Central Bank.

Danny R. Nelson, Springfield, Mo., for Bankruptcy Trustee.

Shaun K. Baskett, Jefferson City, Mo., for State of Mo. Dept. of Revenue.

Douglas C. Bunch, Springfield, Mo., for U.S.A., I.R.S.

James R. Doran, Springfield, Mo., for debtor.

## MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

Pending is Central Bank of Lebanon's Motion to Determine Secured Status and Priority. The issue is whether a mistakenly recorded deed of release should be reformed to permit Central Bank to have a secured claim superior to that of other claimants to the property where the trustee asserts the status of a bona fide purchaser of real property pursuant to 11 U.S.C. § 544(a)(3). Also pending is Central Bank's complaint involving the same issue, filed in U.S. District Court. On May 1, 1990, the complaint was referred to this court by the parties' agreement. This decision disposes of both the complaint and motion which are deemed consolidated.

## I. FACTS

The facts are undisputed. Debtor gave Central Bank an $87,000 promissory note dated May 16, 1986. As security for the note, debtor gave Central Bank two deeds

of trust dated May 16, 1986: one on property in Whispering Oaks Development, and one on property in Southern Heights Subdivision. On May 20, 1986, both deeds of trust were properly recorded in Laclede County, Missouri.

On November 19, 1986, debtor sold the Southern Heights property, and $10,000 in sale proceeds were given to Central Bank to be applied to the outstanding principal and interest on the note. As a result of the sale and receipt of proceeds, Central Bank was supposed to release the deed of trust on Southern Heights. However, on November 20, 1986, Central Bank mistakenly recorded a deed of release on Whispering Oaks instead.

Thereafter, on October 30, 1987, May 23, 1988, and December 20, 1988, the Internal Revenue Service filed in Laclede County various notices of federal tax liens for withholding and unemployment taxes previously assessed against debtor. On May 30, 1989, the Missouri Department of Revenue filed a sales tax lien.

On September 29, 1989, debtor filed a Chapter 11 petition. Central Bank was scheduled as a secured creditor. On December 7, 1989, an order was issued allowing sale of Whispering Oaks for $110,000 pursuant to the terms of debtor's application. Debtor proposed to retain $3,000, pay $77,000 to Central Bank, and use the remainder to partially satisfy the tax liens. Pursuant to a title search in preparation for sale of the property, it was discovered that in 1986 the deed of trust had been mistakenly released on Whispering Oaks instead of Southern Heights.

After discovery of the mistake, the IRS filed a motion to amend the order for sale of Whispering Oaks, requesting that the IRS be paid the full $100,841.59 amount of its claim from the sale proceeds unless Central Bank or other taxing authorities could establish prior perfected security interests.

One day after the IRS filed its motion, Central Bank filed the pending proceeding to determine secured status and priority of its claim. Central Bank requested that the deed of release to Whispering Oaks be held void and that the deed of release be reformed to instead release the Southern Heights deed of trust as should have been done in 1986. The court allowed completion of the Whispering Oaks sale with the proceeds placed in escrow pending resolution of this dispute over priority and nature of claims.[1]

On April 4, 1990, a hearing was held on Central Bank's motion. The parties agreed the facts were undisputed and that after the parties filed post-trial briefs the court could rule on the merits. Six weeks after the hearing, on May 18, 1990, a Chapter 11 trustee was appointed, thereby removing debtor as debtor in possession.

## II. REFORMATION AND TRUSTEE AS HYPOTHETICAL BONA FIDE PURCHASER

■ Missouri law recognizes equitable principles which allow reformation of a mistakenly filed deed of release. *Cameron State Bank v. Sloan*, 559 S.W.2d 564 (Mo. App.W.D.1977) (voided release of deed of trust and cancellation of note where note was mistakenly marked paid by bank officer); *Troll v. Sauerbrun*, 114 Mo.App. 323, 89 S.W. 364 (St.L.1905) (correction of mistaken deed of release).

■ However, these equitable principles are not applicable against a bona fide purchaser. *In re Iowa–Missouri Realty Co., Inc.*, 86 B.R. 617 (Bankr.W.D.Mo.1988), citing *American Bank v. Bray*, 321 Mo. 576, 11 S.W.2d 1016, 1019 (1928) and *Lacy v. Schmitz*, 639 S.W.2d 96, 98–99 (Mo.App.E. D.1982); 9 Thompson on Real Property § 4813, p. 667 (1958).

■ Pursuant to § 544(a)(3), the trustee has the status of a hypothetical bona fide purchaser as of the date of bankruptcy.

1. On January 5, 1990, debtor's Chapter 11 case was dismissed pursuant to motions by the U.S. Trustee and Missouri Department of Revenue. After dismissal Central Bank filed a complaint in U.S. District Court seeking the same relief as sought in its motion to determine secured status and priority. However, by order entered February 6, 1990, debtor's Chapter 11 case was reinstated. On May 1, 1990, the District Court referred the complaint to this court.

Thus, Central Bank is not entitled to reformation of the deed of release due to trustee's status of a bona fide purchaser. In addition, the trustee's status allows it to prevail over any equitable lien which Central Bank claims.

*In re Iowa–Missouri Realty Co., Inc.*, 86 B.R. 617 (Bankr.W.D.Mo.1988), is dispositive of the issues in this case. In *Iowa–Missouri*, a creditor received a deed of trust from the corporate parent as security for a loan to the parent. The deed of trust was defective because a subsidiary of the parent actually owned the property, so the deed of trusted recorded by the creditor was without effect. This court held the deed of trust naming the wrong party as owner, erroneously executed and recorded due to the mutual mistake of the parties,' could not be reformed where reformation would prejudice the rights of the debtor subsidiary, which owned the property, as a debtor in possession and hypothetical bona fide purchaser.

The holding in *Iowa–Missouri* is consistent with *In re R & J Construction Co., Inc.*, 43 B.R. 29 (Bankr.E.D.Mo.1984) (refused to reform deed of trust with a defective legal description). *See also In re Pribish*, 25 B.R. 403 (Bankr.D.Me.1982) (under Maine law, debtors who conveyed real estate in fact owned by corporate debtors were not entitled to reformation of deed, given trustee's strong arm powers).

Central Bank argues that *Iowa–Missouri* and *R & J Construction* are distinguishable because unlike Central Bank, the creditors in those cases through their own actions or negligence never had a valid lien on the property. This distinction is without merit. What is relevant under § 544(a)(3) is whether a creditor has a valid lien as of the date of bankruptcy. As of the date debtor filed bankruptcy, Central Bank did not have a valid lien because it had previously released the deed of trust. The distinction between a mistake in execution of a deed of trust and a mistake in executing a release of a deed of trust is not relevant.

Research revealed only one bankruptcy case which has addressed the issue of reformation where a deed of trust was released by mistake and the trustee asserted § 544 strong-arm powers. In *Maine National Bank v. Morse (In re Morse)*, 30 B.R. 52 (1st Cir.B.A.P.1983), a mortgage was released by mistake. Although the decision holds that the bank's rights were superior to trustee, the facts are distinguishable. Due to an error of a bank employee, a discharge of a properly recorded mortgage was mistakenly recorded.

The bankruptcy court held that equity will not cancel the discharge and reinstate the mortgage where the rights of the trustee have intervened. *Maine National Bank v. Morse (In re Morse)*, 23 B.R. 160, 162[3] (Bankr.D.1982).

On appeal, the bankruptcy court decision was reversed. The appellate decision followed *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982), which held that a trustee's status under § 544(a)(3) is construed to be that of a hypothetical purchaser with whatever constructive or inquiry notice state law would impute from the actual facts of the transaction. In *McCannon*, the purchaser of a condominium under an unrecorded written agreement with debtor could not be avoided by trustee since purchaser's possession provided constructive notice of the purchaser's rights under state law.

The *Morse* appellate decision reversed the bankruptcy court for failing to go one step further to determine whether the actual facts of the transaction would impute constructive or inquiry notice. Following the discharge of the mortgage, the bank commenced foreclosure proceedings on the property. Thus, a discrepancy existed in that the discharge of the mortgage was followed shortly thereafter by a certificate of foreclosure pursuant to the mortgage. Any person seeking the status of a bona fide purchaser who searched the records would have discovered the obvious discrepancy and would have had a duty of inquiry. Upon inquiry as to the discrepancy, that person would have had actual notice that the discharge was a mistake.

Assuming that *Marston's* holding relating to a trustee's status pursuant to § 544(a)(3) would be followed by this court,

*In re Morse* is clearly distinguishable from the present situation. Unlike *In re Morse,* a person seeking the status of a bona fide purchaser in the present case would not have discovered a discrepancy in the records in the LaClede County recorder's office.

A search by a hypothetical bona fide purchaser[2] of the records pertaining to Whispering Oaks on the date of bankruptcy would not have revealed that the deed of release was mistakenly filed. A search would have revealed that a deed of trust from debtor to Central Bank was recorded May 20, 1986 and that the deed of trust was released by a deed of release recorded November 20, 1986. Thus, unlike *In re Morse,* a search would not have revealed anything to indicate that a mistake had been made.

Based on the facts in this case, and the lack of constructive notice to one who might have searched the records after the deed of release was recorded, *In re Morse* supports the holding that equitable principles will not reform the deed of release as against a trustee who acquired the rights of a bona fide purchaser without notice pursuant to § 544(a)(3).

## III. REFORMATION AND DEBTOR IN POSSESSION

■ Central Bank also argues that a debtor in possession should not be entitled to assert the status of a bona fide purchaser pursuant to § 544(a)(3) because the debtor had constructive notice from prior recorded deeds that the wrong deed of trust had been released. Central cites *Pyne v. Hartman Paving, Inc. (In re Hartman Paving, Inc.),* 745 F.2d 307 (4th Cir.1984), and urges this Court to reconsider its previous holding in *In re Iowa–Missouri Realty Co., Inc.,* 86 B.R. 617 (Bankr.W.D.Mo. 1988).

Central Bank's argument is no longer relevant since a Chapter 11 Trustee was appointed May 18, 1990. In any event, *Hartman Paving* represents a heavily criticized minority position. In contrast, the holding in *Iowa–Missouri Realty* follows the clear majority of courts in adopting a more logical analysis of the realities of the debtor in possession situation and the benefit to the estate and creditors.[3]

■ Following is this court's explanation, restated in full without benefit of quotation marks, from *In re Iowa–Missouri Realty,* 86 B.R. 617, 619–20. The debtor in possession is entitled, under § 1107(a), to stand in the shoes of a trustee and pursue lien avoidance actions under § 544. To rule otherwise would contravene the policy of Chapter 11 to retain debtors in possession to operate the business and administer the estate for the benefit of creditors. It is common for a debtor in possession to have knowledge of defects in prepetition transfers which may be subject to attack as preferences, fraudulent transfers or avoidable liens. Liens are avoided for the benefit of all creditors of the estate. It would be inequitable to creditors in Chapter 11 cases with debtors in possession

---

**2.** Unlike the parties in the present case who discovered the mistake upon searching the records after the bankruptcy case was filed, a hypothetical bona fide purchaser under § 544(a)(3) is presumed not to possess personal knowledge that Central Bank should still have a valid deed of trust.

If a bankruptcy case had not been filed, it appears the IRS and Missouri Department of Revenue could have defeated Central Bank's efforts to reform the erroneous deed of release because at the time they acquired an interest in the property by recording their tax liens, a party searching the records would not have discovered any discrepancy to put it on inquiry notice. The records would merely have reflected the filing and subsequent release of the Whispering Oaks deed of trust.

**3.** *Sandy Ridge Oil Co. v. Centerre Bank National Association (In re Sandy Ridge Oil Co.),* 807 F.2d 1332, 1336 (7th Cir.1986); *In re Herr,* 79 B.R. 793, 796 (Bankr.N.D.Ind.1987); *Ernest & Associates, Inc. v. Great Southwest Supply Co. (In re Ernest & Associates, Inc.),* 59 B.R. 495, 497–98 (Bankr.W.D.Tex.1985); *Matos v. Gwinnett Bank & Trust Co. (In re Matos),* 50 B.R. 742, 744–45 (Bankr.N.D.Ala.1985), *appeal dismissed as moot,* 790 F.2d 864 (11th Cir.1986). *Bandell Investments, Ltd. v. Capital Federal Savings and Loan Association of Denver (In re Bandell Investments, Ltd.),* 80 B.R. 210, 212 (D.Colo.1987); *In re M.S.C., Inc.,* 54 B.R. 650, 653–54 (Bankr.D.S.C. 1985).

**162**

rather than trustees if debtors in possession could not collect assets of the estate through avoidance actions if the debtor had any pre-petition knowledge that would prevent him from being an actual bona fide purchaser. If Congress had intended to prohibit debtors in possession form exercising certain powers of a trustee, it is logical to assume that § 1107(a) would have specified those restrictions rather than, on its face, granting debtors in possession all the rights and powers and directing the debtor to perform all the functions and duties of a trustee.

In conclusion, if debtor had remained a debtor in possession, she would have been authorized on behalf of the estate, for the benefit of creditors, to object to reformation and assert § 544 strong arm powers to avoid Central Bank's alleged lien.

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1. Central Bank shall release the deed of trust on the Southern Heights property.

2. Central Bank's request for reformation of the deed of release on the Whispering Oaks property is denied.

2. Any interest in or lien on the Whispering Oaks property which Central Bank claims is avoided pursuant to § 544(a)(3).

3. Central Bank's claim is allowed as an unsecured claim.

4. Debtor shall retain $3000.00 of the sale proceeds as originally provided in this court's order of December 7, 1989.

5. The undisputed amount of the secured claim of the Internal Revenue Service shall be paid in full from the sale proceeds.

6. The remainder of the sale proceeds shall be paid to the Missouri Department of Revenue to partially satisfy its undisputed claim.